**TRUNCALE v. BLUMBERG et al.**

United States District Court
S. D. New York.

Jan. 31, 1950.

Millard & Greene, New York City, for plaintiff. Milton Pollack, New York City, of counsel.

H. G. Pickering, New York City, Mudge, Stern, Williams & Tucker, New York City, for defendant Clifford Work. John Wallis and Robert E. Walsh, New York City, of counsel.

Phillips, Nizer, Benjamin & Krim, New York City (Louis Nizer and Daniel Glass, New York City, of counsel), for defendant William A. Scully.

Adolph Schimel, New York City (C. S. Landau, New York City, of counsel), for defendant Universal Pictures Co., Inc.

RIFKIND, District Judge.

In the following discussion I shall assume familiarity with the decisions of Judge Medina in Truncale v. Blumberg, D.C.S.D. N.Y. 1948, 80 F.Supp. 387, and D.C., 8 F.R.D. 492. See also Truncale v. Blumberg, D.C.S.D.N.Y. 1948, 83 F.Supp. 628. These narrate the background facts against which the specific issues are herein decided.

The action was brought by a stockholder suing under § 16(b) of the Securities Ex-

change Act of 1934, 15 U.S.C.A. § 78p(b), in behalf of Universal Pictures Co., Inc., to recover shortswing profits realized by defendants from dealings in the corporation's securities.

On motion of plaintiff Judge Medina granted summary judgment and made an order as follows:

"Ordered, that summary judgment be entered accordingly adjudging that Universal Pictures Company, Inc. recover of defendants Cliff Work and William A. Scully such amounts, if any, as may be found to be due to it as damages, and it is further

"Ordered, that so much of this cause as relates to said defendants Cliff Work and William A. Scully be placed on the trial calendar for trial on the sole issue of damages."

The trial so ordered was had and developed no serious issues of fact. It crystallized an issue of law relating to the measure of damages. The facts relevant to that issue may be summarized thus: On March 4, 1941, each of the defendants Work and Scully entered into employment contracts with a corporation to serve in important executive capacities for a period of years. Simultaneously, the parent of the corporation agreed, in consideration of defendants' making the employment contracts, to issue to each of them, after each year of such employment, warrants entitling the holder to purchase 3,000 shares of stock of the parent corporation at $10 a share. Parent and subsidiary were subsequently merged and became Universal Pictures, Company, Inc., the beneficiary corporation named in this action. On December 12, 1945, each of these defendants received from that corporation, pursuant to the contract, warrants for 3,000 shares of its stock. Within six months preceding the date of receipt, each of the defendants had sold warrants for at least 3,000 shares. The total price received by Work was $73,053.-90. The total price received by Scully was $47,635.

It is plaintiff's contention that the total price received was the profit realized and is, therefore, the measure of the damages recoverable against each defendant. It argues that profit is the excess of selling price over cost and that here cost was zero. It supports its view by calling attention to the fact that in their income tax returns each of these defendants, in reporting their capital gains, treated these warrants as having been acquired at no cost.[1]

Plaintiff's contention, superficially, seems to be supported by the language of the statute. The results it produces in this case are, however, so bizarre as to compel closer scrutiny. If plaintiff is right, it follows that throughout the term of employment defendants can never sell any warrants for their own benefit. Since the warrants were issued in annual installments, any sale by them, no matter when effected during the term of employment, would be within six months of the last previous receipt or of the next succeeding one. The whole of the sale price would be forfeited to the corporation. The contract here involved did not prohibit sales of the warrants by the defendants during the term of employment. This is, of course, irrelevant to the construction of the statute; but it does reveal its impact when damages are measured in accordance with the plaintiff's theory.

Warrants of the kind here under consideration become valuable only as the enterprise is successful. [When this contract was made the market price of the stock was below the price stated in the warrants.] The corporation issuing such warrants may believe that success may be wrung out of the marketplace by the extraordinary effort of its management, stimulated by a stock purchase warrant. Nothing in § 16(a) or § 16(b) suggests that Congress frowned upon the use of such a stimulant. But it is not so much the scope of the statute, as the rule of damages advocated by the plaintiff which would tend

---

1. The argument from the income tax report is entitled to very little weight. The income tax law operates on a rationale and system of definitions all its own. They are nowise related to the purposes and definitions controlling § 16(b). Cf. Smolowe v. Delando Corporation, 2 Cir., 1943, 136 F.2d 231, 237–238, 148 A.L.R. 300.

to debase the value of stock purchase-warrants as a coin with which corporations might attract able personnel and stimulate their efforts.

The weak link in the plaintiff's argument, I believe, is the facile assumption that arithmetic is competent to describe the whole of a situation. True enough these defendants paid no dollars for the warrants they received; nevertheless, they did not receive them for nothing. They surrendered their previous employment; they bound themselves contractually to work for a corporation whose prospects at the time were far from promising; they surrendered their freedom of action. There is no ready means of converting these imponderables into dollars and cents.

■ The route to be followed in measuring damages in such a case has not been marked out by the authorities. However, Judge Clark has made a suggestion in his dissenting opinion in Shaw v. Dreyfus, 2 Cir., 172 F.2d 140, which may well be adopted here. That case was concerned with the profits realized on the sale of warrants, evidencing the right to subscribe for stock, issued by a corporation to all stockholders in proportion to their stockholdings. Judge Clark there said, 172 F.2d page 143: "Of course computation of the amount of profit may be slightly more difficult than in the cases of direct purchase and sale. But I cannot see that it presents any insuperable difficulties. It seems to me but the ordinary task of valuing the security at its fair market price at the crucial dates of its acquisition and disposition."

The effect of such a measurement is to treat the transaction as if, on December 12, 1945, the corporation had paid to defendants an amount of money sufficient to purchase such warrants and defendants had thereupon made the purchases. So to treat it seems to me to be sound practice. Clearly the value which the warrants then possessed was not the product of any short-term market activity engaged in by the defendants. It is profits realized from such short-term operations which the statute is designed to reach.

■ In the case at bar the market price of the warrants on December 12, 1945, the date of acquisition, was greater than the market price at the time of the earlier sales. No profits, within the meaning of § 16(b), have been realized and no damages are recoverable.

Findings of fact and conclusions of law accompany this opinion.