S. & S. REALTY CORP.,
Plaintiff-Appellant,

v.

KLEER–VU INDUSTRIES, INC. and
Benjamin Osher,
Defendants-Appellees.

No. 349, Docket 77–7342.

United States Court of Appeals,
Second Circuit.

Argued Dec. 16, 1977.
Decided April 26, 1978.

Barry A. Tessler, New York City, for defendants-appellees.

Avrom S. Fischer, Brooklyn, N. Y., for plaintiff-appellant.

Before LUMBARD, HAYS and MULLIGAN, Circuit Judges.

HAYS, Circuit Judge:

Appellant, S. & S. Realty Corporation, appeals from the grant of defendants' motion for summary judgment in a derivative action brought under § 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b) (1976).[1] The complaint sets forth the efforts that were made by the appellant, as required by § 16(b), to obtain action on the part of the defendant corporation.

---

1. Section 16(b) provides:

For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

Appellant is the stockholder of record of two shares of the common stock of Kleer-Vu Industries, Inc. ("Kleer-Vu"), the corporate defendant. Kleer-Vu is a publicly traded company whose securities are listed on the American Stock Exchange and registered with the Securities & Exchange Commission. The individual defendant, Osher, was at all relevant times the president and chairman of the board of Kleer-Vu. The complaint alleges that Osher bought and sold Kleer-Vu securities within six months and requests that the profit he received be remitted to Kleer-Vu, the issuer, as prescribed by § 16(b). The facts are detailed below.[2]

## I

On November 9, 1972, the Board of Directors of Kleer-Vu authorized a five year, six percent loan of up to $300,000 to Osher. The loan was to be secured by shares of Kleer-Vu stock owned by Osher. The Board also approved the sale of up to 50,000 shares of Kleer-Vu stock at a price equal to the average price of those shares on the American Stock Exchange on the date of purchase. On March 20, 1973, Osher borrowed $212,500 from the corporation and purchased 50,000 shares of Kleer-Vu stock.

■ There was no indication either in the accountant's report that was made by Ernst

& Ernst in connection with the 1972 audit or in the letter that was sent by Kleer-Vu's counsel to the accountants at the time of the transaction, that there were any defects in the transaction. However, when Price Waterhouse & Co. replaced Ernst & Ernst as Kleer-Vu's accountants, they raised some questions regarding the transaction. According to an internal memorandum of Price Waterhouse that was obtained by the appellant and is cited in its brief, the accountants met with Osher on April 12, 1974, to discuss the transaction. Osher made it clear that the transaction was, in substance, intended to be no more than the issuance of stock in exchange for a non-recourse note. As a result of this meeting, Kleer-Vu's counsel investigated the transaction and determined that it was voidable at the option of the Board. This was so because it was revealed that the loan was not effectuated as contemplated by the Board. Osher never received the money; it was redeposited in the company's account to pay for the stock. In addition, Osher never executed a promissory note or evidenced his indebtedness in any other manner or put up any stock as collateral for the loan. As a result, the only consideration that was received for the 50,000 shares was Osher's obligation to make future payments. Under *N.Y. Bus. Corp. Law* § 504(b) (McKinney 1963), that is not a permissible transaction.[3]

---

2. The facts alleged in the complaint are primarily based upon information provided in disclosure documents prepared by Kleer-Vu: April 23, 1973, and July 8, 1974 proxies soliciting votes for the Board of Directors and the Annual Reports for 1972 and 1973.

3. Section 504, in relevant part, provides:
      (a) Consideration for the issue of shares shall consist of money or other property, tangible or intangible, or labor or services actually received by or performed for the corporation or for its benefit or in its formation or reorganization, or a combination thereof. In the absence of fraud in the transaction, the judgment of the board or shareholders, as the case may be, as to the value of the consideration received for shares shall be conclusive.
      (b) Neither *obligations of the subscriber* for future payments nor future services shall constitute payment or part payment for shares of a corporation.

* * * * * *

      (h) Certificates for shares may not be issued until the full amount of the consideration therefor has been paid, except as provided in paragraphs (e) and (f) of section 505 (Rights and options to purchase shares; issue of rights and options to directors, officers and employees).
It is settled New York law that non-compliance with § 504 renders the transaction voidable rather than void. *E. g., Frankowski v. Palermo,* 47 A.D.2d 579, 363 N.Y.S.2d 159 (4th Dept. 1975) (shares issued for less than par value); *Kimmel Sales Corp. v. Lauster,* 167 Misc. 514, 519–20, 4 N.Y.S.2d 88, 93–94 (S.Ct. Monroe Cty. 1938) (decided under former § 69, the precursor of § 504(a) and (b)).
      The appellant argues that the stock purchase was not voidable under § 504 because the underlying loan was a bona fide, non-rescindable transaction. It charges that Osher did, in fact, execute a note and that he subsequently destroyed the documents evidencing the transac-

Subsequently, the Board voted to rescind the transaction. It cancelled Osher's indebtedness in exchange for the return of the certificate for the 50,000 shares. It also agreed to indemnify Osher for the tax consequences of the rescission. In the 1973 financial statement, the accountants treated the rescission as if it had been made on the date of the original transaction.

Between March 20, 1973, the date of the original transaction, and May 17, 1974, the date of the first of the two Board meetings approving the rescission, the price of Kleer-Vu dropped from $4.25 a share to $1.50 a share. Appellant alleges that in light of the meager volume of trading in Kleer-Vu securities on the Exchange on the day of the rescission, the market value of a bloc of shares as large as 50,000 was no more than $15,000. Accordingly, it asserts a claim under § 16(b) on the theory that Osher bought the securities on March 20, 1973, and then, via a retroactive rescission, sold them back to the corporation on the same day at a price, the cancellation of the $212,500 loan, that was almost $200,000 more than the value of the shares.

In July 1976, the parties agreed to allow the appellant to depose Osher in connection with this and two other related lawsuits commenced by the appellant. Osher did not appear for that deposition. On December 8th, the appellant moved for an order pursuant to Fed.R.Civ.P. 37(d) to compel Osher to appear. The district court granted this motion on February 15, 1977, ordering Osher to appear for a deposition on February 28th. He did not. On March 1st, the defendants filed a notice of motion for summary judgment and on the 23rd they filed a motion for a protective order staying Osher's deposition pending the determination of the summary judgment motion. The motion for a protective order was dismissed as moot when the district court granted defendants' motion for summary judgment on May 17, 1977.

In granting the summary judgment motion, the district court held that Osher received no "profit" within the meaning of § 16(b). *S. & S. Realty Co. v. Kleer-Vu Indus. Inc.,* [Current Binder] *Fed.Sec.L. Rep.,* (CCH) ¶ 96,056 (S.D.N.Y. May 16, 1977). Because it disposed of the case on that ground, the district court did not reach some of the more difficult issues of law and fact presented in this case: Whether the rescission was bona fide—i. e., whether there was a "purchase and sale," or whether it should be considered retroactively—i. e., whether the purchase and sale occurred within six months.

On this appeal, the appellant urges that the avoidance of a loss was profit and that, in the alternative, the amount received by Osher as reimbursement for his tax liabilities on the transaction was profit. Appellant also argues that it was improper to grant summary judgment before discovery could be had. Because we agree with the district court's disposition of the substantive issue, we conclude that the grant of summary judgment was proper. Accordingly, we affirm.

## II

The key issue on this appeal is whether Osher received any "profit" within the meaning of § 16(b). We start from the premise that when words of familiar usage are used in a statute they should be understood in their ordinary sense. *Malat v. Riddell,* 383 U.S. 569, 571, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966) (per curiam); *NLRB v. Coca-Cola Bottling Co.,* 350 U.S. 264, 268–69, 76 S.Ct. 383, 100 L.Ed. 285 (1956); *Rosenspan v. United States,* 438 F.2d 905, 911 (2nd Cir.), *cert. denied,* 404 U.S. 864, 92 S.Ct. 54, 30 L.Ed.2d 108 (1971); *Folker v. Johnson,* 230 F.2d 906, 907 (2nd Cir. 1956). As normally comprehended, profit connotes an "excess of returns over expenditures in a transaction or series of transactions: as . . . the excess of the price received over the price paid for goods sold. . . ."

tion "[i]n order to create a record to justify the rescission. . . ." However, Section 504 would probably not have been satisfied even if

a note had been executed. *See In re Waterloo Organ Co.,* 134 F. 341, 343 (2nd Cir. 1904).

*Webster's Third New International Dictionary* at 1811 (1963). The language of the statute—"any profit realized . . . shall inure to and be recoverable by the issuer . . ."—underscores this understanding of the term. The word "realized" also connotes gain. The word "recoverable" implies the existence of a tangible asset or a fund. One would be hard put to recover the avoidance of a loss.

Appellant does not allege that the price that Osher received for the goods was greater than the price he originally paid. Nor does it claim that, when all the transactions were completed, Osher had any "excess of returns over expenditures." Rather, the most that can be said is that Osher received an economic benefit—he avoided a loss. Since there was no actual profit, § 16(b) is not applicable. *See Stella v. Graham-Paige Motors Corp.,* 259 F.2d 476 (2nd Cir. 1958), *cert. denied,* 359 U.S. 914, 79 S.Ct. 583, 3 L.Ed.2d 576 (1959) (after proper valuation of purchase price, no actual profit was realized); *Truncale v. Blumberg,* 88 F.Supp. 677 (S.D.N.Y.), *aff'd,* 182 F.2d 1021 (2nd Cir. 1950) (same).

### III

Appellant argues that it was improper to grant summary judgment before it had an opportunity to begin discovery. Appellant stresses that this is a stockholder's derivative action where only the defendants have direct personal knowledge of the relevant facts. Moreover, it appears that the appellant's good faith efforts to begin discovery were thwarted by the actions of the defendant. Osher twice failed to appear for a noticed deposition, the second time in violation of an order compelling his appearance.

Despite these arguments, we cannot say that the district court erred in granting the defendants' motion for summary judgment. First, summary judgment was the proper procedural mechanism for disposing of this case because there were no relevant disputed issues of fact. The district court decided this case on one ground only: there was no profit. There is no factual dispute on this point. The appellant claims that Osher profited by avoiding a loss. In the alternative, it claims that the money that Osher received as reimbursement for the tax consequences of the transaction was profit. But these are merely questions of characterization, legal issues. And, as noted above, the district court was correct in deciding these legal issues adverse to the appellant. Second, the fact that discovery had not yet begun is not dispositive in this case. In *Schoenbaum v. Firstbrook,* 405 F.2d 215 (2nd Cir. 1968) (en banc), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969), we noted that

> summary judgment should rarely be granted against a plaintiff in a stockholder's derivative action especially when the plaintiff has not had an opportunity to resort to discovery procedures.

*Id.* at 218. But, unlike *Schoenbaum,* this is not a case "where the facts alleged by the plaintiff provide a ground for recovery . . . ." *Id.* Thus, because the appellant does not allege any facts that indicate that a profit was received, his § 16(b) claim must fail. The grant of summary judgment in this case was proper.

### IV

In affirming, we would note that this ruling is not inconsistent with the policy behind § 16(b). While it is true that today's decision might eliminate from the purview of § 16(b) some situations involving short swing trading on inside information, the statute was not designed to prohibit all such transactions. Rather, it was intended to deter such trading by employing a simple disincentive: the disgorgement of all profits obtained from sales and purchases made within six months regardless of whether inside information was relied on or not. Since the defendant in this case made no profit, he cannot be subject to this sanction.

We would also note that while the machinations in this case do not seem wholly proper, they do not involve the type of abuse to which § 16(b) was addressed. Rather, they involve conduct that could be viewed as an abuse of fiduciary duties or,

conceivably, a scheme or artifice to defraud. If so, the remedies for these types of conduct are provided for by state law and § 10(b), 15 U.S.C. § 78j(b) (1976), respectively.

Affirmed.