**SCIENTEX CORPORATION,**
Plaintiff-Appellee,

v.

**Harry KAY, Defendant-Appellant.**

No. 81–5978.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 8, 1982.

Decided Oct. 7, 1982.

Charles T. Rose, Los Angeles, Cal., for defendant-appellant.

Dale L. Gronemeier, Abouaf, Epstein, Myers & Gronemeier, North Sherman Oaks, Cal., for plaintiff-appellee.

Before ALARCON, POOLE and BOO-CHEVER, Circuit Judges.

ALARCON, Circuit Judge:

ScienTex Corporation (ScienTex) filed an action in the district court below seeking a mandatory injunction to require Harry Kay to comply with the provisions of the Securities Exchange Act of 1934 § 16(a), 15 U.S.C. § 78p(a). The court granted Scien-Tex's motion for summary judgment and issued a permanent mandatory injunction directing Kay to file all statements required by section 16(a). Kay has appealed the judgment to this court. We granted his emergency motion for a stay of enforcement of the judgment pending appeal.

■ The sole issue raised on appeal is whether a private right of action for injunctive relief is properly implied under section 16(a). We hold that it is not.

## I.

The following facts are not disputed. Kay was an officer or director of ScienTex, or a shareholder of more than ten percent of common stock in ScienTex, during the period from August, 1977 through December, 1980.[1] Kay engaged in stock transactions involving ScienTex stock during this time period. According to ScienTex, these transactions should have been reported pursuant to section 16(a) for "virtually every thirty (30) day period" from August, 1977 through December, 1980. Kay filed only one such statement in May, 1978. ScienTex brought this action to mandate Kay's compliance with section 16(a). ScienTex contends that the information is necessary to determine if it may recover "short swing" profits, if any, realized by Kay.

## II.

This circuit has not previously addressed whether a private right of action for injunctive relief exists pursuant to section 16(a). Although the statute does not expressly provide for such remedy, ScienTex asserts it creates one by implication.[2]

---

1. This common stock was a class of securities that was registered pursuant to the Securities Exchange Act of 1934 § 12, 15 U.S.C. 78*l*.

2. The Supreme Court has indicated that the Securities Exchange Act of 1934 § 27, 15 U.S.C. § 78aa (grants, inter alia, exclusive jurisdiction to the federal district courts for viola-

tions or enforcement for all of the Act) does not give rise to implied private right of action of the Act. *See Touche Ross & Co. v. Redington,* 442 U.S. 560, 576–77, 99 S.Ct. 2479, 2489–90, 61 L.Ed.2d 82 (1979). We must therefore examine § 16(a) to determine whether it creates such a right.

The Supreme Court has noted that the approach to the task of determining whether Congress intended to authorize a private cause of action has undergone significant change. *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* — U.S. —, —, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). The common-law tradition that regarded the denial of such a remedy as an exception rather than the rule is no longer followed. *See id.* In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the court unanimously modified its approach to the issue of whether a private right of action is to be inferred from a federal statute. *Curran,* — U.S. at — & n.37, 102 S.Ct. 1837 & n.37. *Cort* listed several criteria, including congressional intent, to determine whether such an inference was proper. Cases subsequent to *Cort,* however, have plainly stated that the focus must be on the intent of Congress. *Curran,* — U.S. at —, 102 S.Ct. at 1839–40.

Accordingly, we must decide whether Congress intended to create such a right of action without explicitly saying so. *Curran,* — U.S. at —, 102 S.Ct. at 1839–40; *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 13, 101 S.Ct. 2615, 2622–23, 69 L.Ed.2d 435 (1981) (citing *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981); *California v. Sierra Club,* 451 U.S. 287, 293, 101 S.Ct. 1775, 1778–79, 68 L.Ed.2d 101 (1981); *Universities Research Assn. v. Coutu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979)).

To discern the intent of Congress, we must first look to the statutory language, particularly the provisions for enforcement and relief. We must then "review the legislative history and other traditional aids of statutory interpretation . . .," *National Sea Clammers Association,* 453 U.S. at 13, 101 S.Ct. at 2623.[3]

A.

The statute is silent as to whether compliance can be compelled through the filing of a private cause of action. Section 16(a) provides:

(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to section 781 of this title, or who is a director or an officer of the issuer of such security, *shall file,* at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to section 781(g) of this title, or within ten days after he becomes such beneficial owner, director, or officer, a statement with the Commission (and, if such security is registered on a national securities exchange, also with the exchange) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been a change in such ownership during such month, *shall file* with the Commission (and if such security is registered on a national securities exchange, shall also file with the exchange), a statement indicating his ownership at the close of the calendar month and such changes in his ownership

---

**3.** ScienTex stresses that it is seeking injunctive relief rather than damages. The Supreme Court has not, however, based the analysis of whether a statute implies a private right of action on the basis of what remedy is sought. For example, the Court found that § 215 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–15 created an implied private cause of action for recission of a contract or for an injunction. *Transamerica Mortgage Advisors, Inc.,* 444 U.S. at 19, 100 S.Ct. at 246–47. In making that determination the Court stated that, as its recent decisions had made clear, the ultimate issue is whether Congress intended to create the private remedy asserted. *Id.* at 15–16, 100 S.Ct. at 245. Thus, the type of relief sought is relevant only to the issue of congressional intent.

as have occurred during such calendar month.

15 U.S.C. § 78p(a) (emphasis added).

By its terms § 16(a) is simply a filing requirement. No enforcement rights are expressly conferred on private parties nor is any conduct proscribed as unlawful. In these respects it is similar to the Securities Exchange Act of 1934 § 17(a), 15 U.S.C. § 78q(a), which has been held by the Supreme Court *not* to create an implied private right of action.[4] *See Touche Ross & Co.,* 442 U.S. at 575–76, 99 S.Ct. at 2488–89. In *Touche Ross & Co.,* the Court found that where no enforcement rights were conferred on private parties and no conduct was proscribed as unlawful, it was evident that Congress intended section 17(a) merely to "require certain regulated businesses to keep records and file periodic reports...." *Id.* at 569, 99 S.Ct. at 2485. Similarly, with reference to section 16(a), it appears that on its face it was the intent of Congress solely to require that certain regulated persons file periodic reports.

ScienTex, however, seeks to distinguish section 17(a) and the holding in *Touche Ross & Co.* on the basis that, although both provisions are designed to provide information, section 16(a) is essentially different because it "seeks to elicit information so that the issuer of stocks can determine if it has a right to recover short-swing profits from the insider under section 16(b)."[5] Appellee's Brief at 16–17. ScienTex, however, offers no authority for this proposition. Indeed, nothing in the statute itself, nor in the legislative history as discussed *infra,* supports this contention.

The fact that the National Securities Exchange Act of 1934 expressly provides for enforcement in section 16(b) convinces us that congressional intent to provide a pri-

---

**4.** Section 17(a) provides:

(a)(1) Every national securities exchange, member thereof, broker or dealer who transacts a business in securities through the medium of any such member, registered securities association, registered broker or dealer, registered municipal securities dealer, registered securities information processor, registered transfer agent, and registered clearing agency and the Municipal Securities Rulemaking Board shall make and keep for prescribed periods such records, furnish such copies thereof, and make and disseminate such reports as the Commission, by rule, prescribes as necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter.

(2) Every registered clearing agency shall also make and keep for prescribed periods such records, furnish such copies thereof, and make and disseminate such reports, as the appropriate regulatory agency for such clearing agency, by rule, prescribes as necessary or appropriate for the safeguarding of securities and funds in the custody or control of such clearing agency or for which it is responsible.

(3) Every registered transfer agent shall also make and keep for prescribed periods such records, furnish such copies thereof, and make such reports as the appropriate regulatory agency for such transfer agent, by rule, prescribes as necessary or appropriate in furtherance of the purposes of section 78q–1 of this title.

**5.** Section 16(b) provides:

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection.

15 U.S.C. § 78p(b).

vate right of action under section 16(a) should not be inferred from the statutory language. *See Touche Ross & Co.,* 442 U.S. at 571–72, 99 S.Ct. at 2486–87. In *Touche Ross & Co.,* the Supreme Court, after noting that sections 9(e), 15 U.S.C. 78i(e), and 18(a), 15 U.S.C. § 78r(a), of the 1934 Act also expressly provide a private right of action commented as follows: "Obviously, then, when Congress wished to provide a private damages remedy, it knew how to do so and did so expressly." Id. at 572, 99 S.Ct. at 2487 (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 734, 95 S.Ct. 1917, 1925, 44 L.Ed.2d 539 (1975); *National Railroad Passenger Corp. v. National Association of Railroad Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974); *T.I.M.E. Inc. v. United States,* 359 U.S. 464, 471, 79 S.Ct. 904, 908, 3 L.Ed.2d 952 (1959).

Congress has provided explicit enforcement mechanisms which may be invoked where violations of section 16(a) occur. 2 L. Loss, Securities Regulation 1039–40 (1961) (mandatory injunction and criminal prosecution are the sanctions to enforce compliance with section 16(a)). Under the Securities Exchange Act of 1934, § 21(e), 15 U.S.C. § 78u(e), the Securities Exchange Commission may apply to the district court which will have jurisdiction to "issue writs of mandamus, injunctions, and orders commanding (1) any person to comply with the provisions of [the Securities Exchange Act of 1934] . . . ." *Id.* Congress also provided for criminal sanctions: "Any person who willfully violates any provision of [the Securities Exchange Act of 1934] . . . shall upon conviction be fined not more than $10,000, or imprisoned not more than five years, or both . . . ." *Id.* § 78ff(a). *See, e.g., United States v. Guterma,* 281 F.2d 742, 745 (2d Cir.) (defendant charged with willful violations of the requirements of section 16(a)), *cert. denied,* 364 U.S. 871, 81 S.Ct. 114, 5 L.Ed.2d 93 (1960).

The presence of these remedies for violations of section 16(a) requires that we hesitate to assume that Congress intended to authorize additional judicial remedies for private citizens by implication:

"[I]t is elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." [*Transamerica Mortgage Advisers, Inc.*] 444 U.S. at 19 [100 S.Ct. at 247]. *See also Touche Ross & Co. v. Redington, supra,* [442 U.S.] at 571–74 [99 S.Ct. at 2486–88]. In the absence of strong indicia of a contrary congressional intent, we are *compelled* to conclude that Congress provided precisely the remedies it considered appropriate.

*National Sea Clammers Association,* 453 U.S. at 14–15, 101 S.Ct. at 2623–24. (emphasis added).

We turn, therefore, to a review of the legislative history to determine whether there is any such indicia of congressional intent to create a private right of action by implication.

### B.

The legislative history of section 16(a) is silent as to the private enforcement of its requirements. ScienTex points out, however, that "the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available." *Transamerica Mortgage Advisers, Inc.,* 444 U.S. at 18, 100 S.Ct. at 246. ScienTex argues that because "the whole of Section 16 is designed to provide a means by which the issuer of a security can recover shortswing trading profits by an insider," the intent of Congress to provide a private right of action may be fairly implied. Appellee's Brief at 11–12. No authority for this statement is cited by ScienTex.

The house report described the purpose of the provisions of section 16 is as follows:

A renewal of investors' confidence in the exchange markets can be effected only by a clearer recognition upon the part of the corporate managers of companies whose securities are publicly held of their responsibilities as trustees for their corporations. Men charged with the administration of other people's money must not

use inside information for their own advantage. Because it is difficult to draw a clear line as a matter of law between truly inside information and information generally known by the better-informed investors, the most potent weapon against the abuse of inside information is full and prompt publicity. For that reason, this bill requires the disclosure of the corporate holdings of officers and directors and stockholders owning more than 5 percent of any class of stock, and prompt disclosure of any changes that occur in their corporate holdings. Short selling and selling against the box by insiders are prohibited. These provisions have been called the "anti-Wiggin provisions" of the bill. The Committee is aware that these requirements are not air-tight and that the unscrupulous insider may still, within the law, use inside information for his own advantage. It is hoped, however, that the publicity features of the bill will tend to bring these practices into disrepute and encourage the voluntary maintenance of proper fiduciary standards by those in control of large corporate enterprises whose securities are registered on the public exchanges.

H.R.Rep.No.1383, 73rd Cong., 2d Sess. 13 (1934).[6]

Section 16 was thus promulgated to curtail stock market abuses by insiders. Section 16(a) was "based upon the theory that if such transactions were publicized they would be discontinued." Cook & Feldman, *Insider Trading Under the Securities Exchange Act,* 66 Harv.L.Rev. 385, 386 (1953).[7] Section 16(b) was premised on "the theory that if the possibility of profit were removed, short-swing trading by insiders would be discontinued...." *Id.* at 387. Section 16(c) "imposes an absolute prohibi-

tion upon certain sales...." *Id.* Scien-Tex's contention that section 16 as a whole was designed to provide the issuer of a security a private means to recover shortswing trading profits by an insider simply lacks merit. The legislative history of section 16(a) does not indicate an intent by Congress to imply a private right of action.

### C.

█ Finally, congressional intent to imply a private right of action may be inferred in a situation where there has been a "routine and consistent" recognition by the federal courts that such a cause of action exists. In *Curran,* congressional intent to imply a private cause of action was found by the Court where the federal statute there under consideration, the Commodity Exchange Act, 7 U.S.C. § 1 et seq., had been comprehensively reexamined and significantly amended after it had been routinely and consistently construed by the courts as providing a private cause of action by implication. *See id.* —— U.S. at ——, ——, 102 S.Ct. at 1840–41. Congress "left intact the statutory provisions under which the federal courts had implied a cause of action...." *Id.* at ——, 102 S.Ct. at 1841. This was construed by the Supreme Court as "evidence that Congress affirmatively intended to preserve that remedy." *Id.* (footnote omitted).

In the matter before us, Congress significantly amended the Securities Exchange Act of 1934, after an extensive study, in 1965. *See* H.R.Rep.No.1418, 88th Cong., 2d Sess., *reprinted in* 1964 U.S.Code Cong. & Ad.News 3013, 3017–19. Whether a private cause of action exists under section 16(a) however, appears not to have been addressed directly by the courts prior to 1964.[8]

---

**6.** Later, in the same report, it is noted that § 16(a) will also give investors information upon which they may form an opinion as to the prospects of the company. *Id.* at 24.

**7.** Donald Cook was Chairman of the Securities Exchange Commission when this article was published.

**8.** In *Grossman v. Young,* 72 F.Supp. 375 (S.D. N.Y.1947), the district court indicated that the remedy for violations of section 16 was provided by section 16(b). The court stated that: "Section 16 was the method selected by [C]ongress to control and regulate activities by insiders. [Section 16(a)] ... imposes the duty of prompt disclosure. [Section 16(b)] ... provides a civil remedy designed to discourage the

Thus, in the matter before us there is no support for the implication of a private cause of action under the *Curran* rationale.

### III.

It is eminently logical that a private cause of action to enforce compliance with section 16(a) be available in order to provide plaintiffs with information concerning the basis of a claim under section 16(b). The function of this court is not, however, to provide a private remedy merely because Congress ought to have done so. We recognize that without the information required under section 16(a), it may be very difficult for ScienTex to pursue a claim under section 16(b). "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross & Co.,* 442 U.S. at 578, 100 S.Ct. at 2490. "Under Art. III, Congress alone has the responsibility for determining the jurisdiction of the lower federal courts. As the Legislative Branch, Congress also should determine when private parties are to be given causes of action under legislation it adopts." *Cannon v. University of Chicago,* 441 U.S. 677, 730, 99 S.Ct. 1946, 1975, 60 L.Ed.2d 560 (1979) (Powell, J., dissenting). To do otherwise would be to stray from the doctrine of the separation of powers. *See id.* at 730–31, 99 S.Ct. at 1974–75.

The language and structure of section 16(a) of the Securities Exchange Act of 1934 and its legislative history lead us to conclude that Congress did not intend to imply private remedies in addition to those expressly provided. *See National Sea Clammers Association,* 453 U.S. at 18, 101 S.Ct. at 2625. This court is not authorized to ignore this legislative judgment. *See id.*

The judgment of the district court is REVERSED.

activities frowned upon." *Id.* at 378. One other court in 1964, indirectly touched on the issue of private standing under § 16(a). In *Rogers v. Valentine,* 37 F.R.D. 231 (S.D.N.Y.1964), the

court granted summary judgment for the defendant in a private action alleging violations of section 16(b) despite the appearance in the record of a clear violation of § 16(a).