Harry KAY, An Individual,
Appellant/Cross-Appellee/Defendant,

v.

SCIENTEX CORPORATION, a Nevada
corporation,
Appellee/Cross-Appellant/Plaintiff.

Nos. 82–6035, 82–6047.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 7, 1983.

Decided Nov. 1, 1983.

Dale L. Gronemeier, Abouaf, Epstein, Myers & Gronemeier, North Sherman Oaks, Cal., for appellee/cross-appellant/plaintiff.

Charles T. Rose, Los Angeles, Cal., for appellant/cross-appellee/defendant.

## OPINION

Appeal from the United States District Court for the Central District of California.

Before SKOPIL and FARRIS, Circuit Judges, and CROCKER,* District Judge.

SKOPIL, Circuit Judge:

### INTRODUCTION

Harry Kay ("Kay") acquired majority ownership of ScienTex Corporation ("Scien-Tex") through stock acquisitions in 1975 and thereafter became a corporate officer and director. He was an insider for purposes of section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p.[1]

Kay acquired and sold additional stock during a six month period in 1979 and 1980. ScienTex sought Kay's short-swing profits in an action under section 16(b) of the Securities Exchange Act. Cross-motions for summary judgment were filed. The district court granted ScienTex's motion with regard to one of the stock transactions, and granted Kay's motion with regard to the remainder of the alleged stock transactions. Both Kay and ScienTex appealed. We affirm in part and reverse in part.

### FACTS AND PROCEEDINGS BELOW

ScienTex holds the rights to a high-speed medical x-ray camera. It has never marketed it and apparently is not in production. ScienTex has no income.

Kay acquired his initial holdings in Scien-Tex in 1975. He was the controlling shareholder, an officer and a director of Scien-Tex from 1975 to December 1979 when Trinidad Holdings Ltd. ("Trinidad") purchased shares from ScienTex and became the majority shareholder. Kay continued as a corporate director of ScienTex until December 1980.

In early December 1979 Kay discovered that he had less stock than he believed he was entitled to. He met with the ScienTex transfer agent to discuss the number of shares he owned. As a result, Kay was issued 673,170 shares on December 11, 1979.

During the six months prior to and the six months after this transfer, Kay made numerous sales of ScienTex stock. With one exception, he has failed to file insider trading reports as required by 15 U.S.C.

---

* The Honorable Myron D. Crocker, United States District Judge for the Eastern District of California, sitting by designation.

1. An "insider" is "[e]very person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security . . . or who is a director or an officer of the issuer of such security. . . . " 15 U.S.C. § 78p(a).

§ 78p(a).[2]

In June 1980 ScienTex conducted an audit and discovered that the block of shares transferred to Kay the prior December had been transferred in error. Kay disputed ScienTex's claim.

In August ScienTex decided to ratify and confirm the issuance of all of the shares held by Kay. ScienTex alleges it faced potential old shareholder suits for the improper dilution of their holdings, and new shareholder suits by purchasers from Kay to have their shares recognized. To avoid both legal problems, and to avoid a fight with Kay, ScienTex chose to ratify the wrongly issued shares, acquire 673,170 shares through its majority shareholder Trinidad, and then cancel them. Trinidad purchased all shares owned by Kay. Of these, approximately 673,170 were given to ScienTex and cancelled. As a part of the ratification, ScienTex waived the right to contest the ownership of any of Kay's stock holdings.

During this period Kay was also the controlling shareholder of Integrated Optical Systems, Inc. ("IOS"). In 1977 IOS sold its rights to certain x-ray technology to ScienTex. In exchange, IOS received rights to a portion of the gross income of ScienTex, or the right to have that income applied to stock purchases of ScienTex. In 1979 ScienTex and IOS agreed that IOS would receive 330,000 ScienTex shares instead of income or its stock equivalent as originally planned. The stock was transferred according to the agreement.

In addition to stock acquired by Kay through the overissuance and vicariously through IOS, ScienTex alleges Kay bought and sold ScienTex stock through nominees.

Kay admits he was involved in a transaction in which 10,000 shares were sold, but characterizes the transaction as a loan from a friend to ScienTex which was later repaid. There is a discrepancy in the facts surrounding stock acquisitions by Kay's assistant Sidney Bradpiece. Bradpiece testified that all the stock he owns he acquired from Kay. ScienTex presented evidence that Bradpiece owns stock of a type ("unrestricted") that Kay never owned, suggesting that Bradpiece got the stock from nominees of Kay who purchased shares on the open market. Kay counters that his stock had a conversion feature and that it became unrestricted after a period of time. ScienTex presents evidence to the contrary.

ScienTex filed its complaint in 1981, claiming that the acquisition of shares in the erroneous transfer, the acquisition of shares through IOS in 1979, and the acquisition of shares through nominees, coupled with sales of ScienTex shares throughout the period, violated the prohibition on "short-swing" profits of section 16(b).

The district court agreed that the acquisition of the 673,170 shares was a "purchase" within the meaning of section 16(b),[3] and granted ScienTex's motion for summary judgment on that issue, holding Kay liable for $443,900 in short-swing profits. The court rejected Kay's arguments that ScienTex should be estopped by its conduct to assert its claims, and that it had waived section 16(b) claims. The court granted Kay's cross-motion for summary judgment on the other stock acquisitions, holding that the acquisition of stock by IOS was exempt from section 16(b) as satisfaction for a pre-existing debt and finding that Kay did not

**2.** Every insider "shall file with the Commission . . . a statement indicating his ownership at the close of . . . [each] calendar month and such changes in his ownership as have occurred during such calendar month." 15 U.S.C. § 78p(a). Kay filed reports as required for one month out of the three-year period he was obligated to file reports. See ScienTex v. Kay, 689 F.2d 879 (9th Cir.1982).

**3.** Section 16(b) provides in part that "[f]or the purpose of preventing the unfair use of infor-

mation which may have been obtained by such . . . [insider] by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer . . . within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer. . . ." 15 U.S.C. § 78p(b).

acquire other stock through nominees. ScienTex and Kay appeal.

## ISSUES

I. Appeal

1. Does the acquisition of the 673,170 shares constitute a "purchase" within the meaning of section 16(b) of the Securities Exchange Act of 1934?

2. Are the defenses of equitable estoppel, waiver and release available to Kay?

II. Cross-Appeal

1. Is Kay estopped to bring a summary judgment motion until he files his insider reports as required by 15 U.S.C. § 78p(a)?

2. Are there issues of material fact concerning Kay's acquisition of ScienTex shares through IOS?

3. Are there issues of material fact with regard to stock purchases by Kay that were not in his name?

## STANDARD OF REVIEW

This court will affirm a summary judgment only if it appears from the record, after viewing all the evidence and factual inferences in the light most favorable to the appellant, that there are no genuine issues of material fact and that appellee is entitled to prevail as a matter of law. *Laborers Health & Welfare Trust Fund v. Kaufman & Broad, Inc.,* 707 F.2d 412, 418 (9th Cir.1983).

I. *Appeal.*

1. Overissuance of Shares.

"[A]ny profit realized by ... [an insider] from any purchase and sale, or any sale and purchase, of any equity security ... within any period of less than six months ... shall inure to and be recoverable by the issuer...." 15 U.S.C. § a 78p(b).

■ Purchase is defined as "any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13). The cases go well beyond this general definition, including within the meaning of "purchase" a broad range of transactions of which the stock-for-cash variety is only the most basic. Thus, an unorthodox transaction such as this one "is held to be a purchase within section 16(b) if in any way it lends itself to the accomplishment of what the statute is designed to prevent." *Blau v. Max Factor & Company,* 342 F.2d 304, 307 (9th Cir.), *cert. denied,* 382 U.S. 892, 86 S.Ct. 180, 15 L.Ed.2d 150 (1965). "In deciding whether borderline transactions are within the reach of the statute, the courts have come to inquire whether the transaction may serve as a vehicle for the evil which Congress sought to prevent...." *Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 594, 93 S.Ct. 1736, 1744, 36 L.Ed.2d 503 (1973). The approach in making this determination is to be a pragmatic one. *Id.*

Section 16(b) was enacted for the purpose of preventing the unfair use of information which may have been obtained by a statutory insider by reason of his relationship to the issuing corporation. 15 U.S.C. § 78p(b). Congress recognized that short-swing speculation by stockholders with advance, inside information would threaten the goal of the Securities Exchange Act to insure the maintenance of fair and honest markets. *Kern County,* 411 U.S. at 591, 93 S.Ct. at 1742. Section 16(b) was aimed at protecting the public "by preventing directors, officers, and principal stockholders of a corporation ... from speculating in the stock on the basis of information not available to others." S.Rep. No. 792, 73d Cong., 2d Sess., 9 (1934).

In *Kern County,* Occidental Petroleum made a tender offer with the intention of taking over Kern County Land Company ("Kern"). To avoid the takeover, Kern merged with Tenneco, with the terms of the merger including a Kern-for-Tenneco stock swap for all shareholders. Occidental was therefore required to trade the shares of Kern it had acquired for the considerably more valuable Tenneco stock. The Supreme Court held that the transaction was not of the type encompassed by section 16(b), focusing on the involuntary nature of

the stock exchange. Occidental had no way of knowing that its purchases would result in a merger to avoid the takeover. The court could see no way that Occidental could have used insider information to profit as it did, primarily because Occidental had no way to anticipate the forced exchange which resulted in profits on stock purchases made within the preceding six months. *See generally, Kern County,* 411 U.S. at 598–600, 93 S.Ct. at 1746–1747.

Other courts too have stressed the importance of voluntariness when examining transactions for inclusion within 16(b). *See, e.g., American Standard, Inc. v. Crane Co.,* 510 F.2d 1043, 1054–56 (2d Cir.1974), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975) (stock exchange after merger not a sale when insider did not direct or anticipate profitable exchange); *Sprague Elec. Co. v. Mostek Corp.,* 488 F.Supp. 842, 845 (1980) (sale of stock was voluntary where seller had control of whether or when transaction would take place); *Oliff v. Exchange Intern. Corp.,* 449 F.Supp. 1277, 1293–95 (1978) (purchase to avoid tax penalty and court ordered sale in court action initiated by petition of seller both voluntary and 16(b) liability attaches).

■ In determining whether the overissuance of shares is a purchase within the meaning of section 16(b) we find it appropriate to inquire into the voluntary nature of the transaction. If an overissuance of stock is done entirely without participation by the recipient of the stock it is doubtful the transaction presents the opportunity for speculative abuse condemned by section 16(b). If, however, the recipient is instrumental in the overissuance, the opportunity for speculative abuse is present. We turn to the facts of this case.

■ It is apparent that Kay caused the overissuance of shares to himself. He initiated contact with the transfer agent for ScienTex, Mr. Russell. Kay set up the meeting attended by him and three of his associates and Mr. Russell. He argued to Mr. Russell that he owned substantially more stock than Mr. Russell's records indicated. It was Kay's powers of persuasion which caused Mr. Russell to alter the records to conform to Kay's claims of stock ownership.[4] The transaction was entirely voluntary with respect to Kay. It was arranged and completed under his direction.

■ On these facts we hold that the acquisition of stock by Kay on December 11, 1979 was a purchase within the meaning of section 16(b). When insiders participate in voluntary acquisitions of stock coupled with conventional sales, the possibility of speculative abuse of insider information is present. Neither proof of actual abuse of insider information nor proof of intent to profit on the basis of such information is necessary under section 16(b). *Kern County,* 411 U.S. at 595, 93 S.Ct. at 1745. The requirements of section 16(b) and *Kern County* have been met. Unless Kay's asserted defenses shield him we must affirm the district court's decision to impose liability for profits earned on the 673,170 shares.

#### 2. Kay's Defenses.

##### (a) Estoppel

Kay argues that ScienTex should be estopped from asserting its section 16(b) claims. He alleges that ScienTex attempted to somehow trap him in a section 16(b) violation manufactured by various officers of the corporation.

This court has not ruled on whether estoppel is a defense to a section 16(b) action. Some courts have ruled that it is not a defense. *See, e.g., Tyco Laboratories, Inc.*

---

**4.** Charles Tepper, an associate of Kay who attended the December 11 meeting between Kay and Russell testified that "Mr. Kay and Mr. Russell discussed and went over Kay's transactions in ScienTex stock for approximately an hour, with Mr. Kay vigorously contending that he owned substantially more stock than Mr. Russell's records reflected and Mr. Russell contending that Mr. Kay owned less stock than Mr. Kay contended that he owned. By the conclusion of the meeting, Mr. Russell appeared confused but finally agreed to accept Mr. Kay's version and adjust forward the number of shares of ScienTex stock on records reflecting Mr. Kay's stock ownership...."

*v. Cutler-Hammer, Inc.,* 490 F.Supp. 1, 8 (S.D.N.Y.1980) (and cases cited therein).

■ We need not decide if estoppel is a defense. Since the moving party satisfied the initial burden, the burden shifted to the party opposing summary judgment to come forward with some evidence to establish a defense. *SEC v. Murphy,* 626 F.2d 633, 640 (9th Cir.1980). Kay has failed to back up his allegations with any evidence of wrongdoing by ScienTex. He has not fulfilled his burden of coming forward with evidence supporting a defense of estoppel.

(b) Waiver, Release

Kay argues that, at the time ScienTex ratified the overissuance, it waived its section 16(b) claims by releasing Kay from all liability.

This court has not decided whether a corporation can waive its right to recover short-swing profits. District courts in two circuits have held that a corporation may not waive its right to recover under section 16(b). *See Allied Artists Pictures Corp. v. Giroux,* 312 F.Supp. 450, 451 (S.D.N.Y. 1970); *Volk v. Zlotoff,* 285 F.Supp. 650, 658 (D.C.N.Y.1968); *Jefferson Lake Sulphur Co. v. Walet,* 104 F.Supp. 20, 23–24 (E.D.La. 1952) *aff'd,* 202 F.2d 433 (5th Cir.), *cert. denied,* 346 U.S. 820, 74 S.Ct. 35, 98 L.Ed. 346 (1953). This position is a sensible one, because otherwise wrongdoing insiders in control of a corporation could waive a corporation's section 16(b) rights to the detriment of "outsiders."

■ We need not decide whether a corporation can waive its rights under section 16(b). The only evidence of any waiver is the decision of ScienTex to ratify the stock overissuance. ScienTex released all "right, title or interests of any kind or nature whatsoever to purchase, settle or compromise all or any part of the shares owned by . . . Kay." The ratification is clearly only a waiver of right to contest the ownership of the overissued stock. There is no suggestion of any intent to waive section 16(b) rights. Kay has failed his burden of com-

ing forward with sufficient evidence to establish the defense.

■ There having been a purchase and corresponding sales within six months, and Kay having failed to present evidence supporting any defense, we affirm the district court's decision requiring Kay to turn over profits earned on the 673,170 shares acquired by him on December 11, 1979.

II. *Cross Appeal.*

1. Estoppel for Failure to File Insider Reports.

The district court granted Kay's motion for summary judgment regarding allegations of stock acquisitions through IOS and nominees. ScienTex argues Kay should be estopped from pursuing summary judgment until he files reports of his trading activity in ScienTex stock.

Section 16(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(a), requires that insiders file monthly reports with the Securities Exchange Commission regarding their trading activity. Kay failed to file in every month between August 1977 and December 1980, except for the month of May 1978. *See ScienTex Corp. v. Kay,* 689 F.2d 879, 880 (9th Cir.1982) (no private right of action to compel required insider trading reports).

ScienTex argues that Kay should not be permitted to utilize the courts to his advantage until he files his required insider reports. It argues it should not be subject to summary judgment where Kay's failure to report deprives it of information necessary to present evidence of Kay's trading. Since ScienTex cannot compel reporting, *Scientex Corp. v. Kay,* 689 F.2d at 885, and the reports are a comprehensive source of information regarding an insider's trading, ScienTex argues it is without the means to fully counter a motion for summary judgment and Kay benefits from his own wrongdoing.

While no court has considered the issue, this circuit has decided that the failure to file insider reports tolls the statute of limitations on a section 16(b) action. *Whittaker v. Whittaker Corp.,* 639 F.2d 516 (9th Cir.),

*cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). In *Whittaker,* this court held that the two year statute of limitations did not begin to run until the required insider reports are filed:

[The purpose of the statute] would be thwarted if insiders could escape liability by not reporting as required under § 16(a). "It would be a simple matter for the unscrupulous to avoid the salutary effect of section 16(b) which provides a remedy for the recovery of short term profits, simply by failing to file monthly reports in violation of subdivision (a) and thereby concealing from prospective plaintiffs the information they would need to adequately protect their interests. Such a construction would reward the violation of the statute and would manifestly frustrate congressional purpose.

*Whittaker,* 639 F.2d at 528 *quoting Blau v. Albert,* 157 F.Supp. 816, 819 (S.D.N.Y.1957). The primary justification for the ruling in *Whittaker* was that individual stockholders would be deprived of information necessary to protect their 16(b) interests.

The argument for estoppel in this case would be stronger if the proponent were an individual shareholder. Individual shareholders would likely be ignorant of the trading by insiders without the reports required by 16(a). "Such shareholders are likely to be outsiders, minority holders. Their main source of information for the suits Congress has empowered them to bring likely will be the required § 16(a) reports." *Whittaker,* 639 F.2d at 528. The same cannot be said of the issuing corporation of the stock which is being traded in violation of sections 16(a) and (b). The corporation has its own records which reflect stock transfers by the insider. Where individual stockholders must look to section 16(a) reports, the issuing corporation can rely on its own records. The justification for *Whittaker* is thus not present when, as here, the issuing corporation is the moving party.

It is settled that one asserting estoppel must be ignorant of the facts which it is claimed another has the duty to reveal. *James v. Nelson,* 90 F.2d 910, 917 (9th Cir.), *cert. denied,* 302 U.S. 721, 58 S.Ct. 41, 82 L.Ed. 556 (1937). ScienTex has not alleged it is without its own records of Kay's trading. Indeed, the record is heavy with details of the trading activity of Kay during the relevant period. ScienTex uses these records to establish the section 16(b) violations. Through its own records, ScienTex has the information which would be contained in insider reports under section 16(a). ScienTex has therefore failed to show that it is ignorant of the facts which it is claimed Kay has a duty to reveal, and its estoppel claim must fail.

2. Stock Acquisitions of IOS.

Section 16(b) prohibits short-swing sales and purchases unless stock acquisitions are "in good faith in connection with a debt previously contracted...." 15 U.S.C. § 78p(b). The district court found that the September 4, 1979 acquisition of IOS of 330,000 shares of ScienTex was in connection with a pre-existing 1977 debt. The district court held that the stock acquired by IOS was exempt from section 16(b) consideration.[5]

There is no dispute that a debt was created in favor of IOS in 1977 when IOS transferred rights to x-ray technology to ScienTex. Kay argued, and the district court agreed, that the stock acquisition by IOS in 1979 was in satisfaction of that debt and therefore exempt from 16(b). ScienTex would agree except, it argues, there was no outstanding debt in 1979. ScienTex maintains the 1977 debt was extinguished by a separate agreement in 1978. Kay argues the 1978 agreement was rescinded and did not extinguish the 1977 debt, which therefore survived until 1979.

The 1978 agreement states that "IOS and Kay hereby irrevocably waive any right

**5.** We need not pause over the question of whether the acquisition of stock by a corporation is also an acquisition by that corporation's insiders for purposes of 16(b). Kay was the sole shareholder in IOS. Stock acquisitions by IOS and profits on them benefitted Kay directly dollar for dollar. We have no difficulty under the circumstances treating the IOS transaction as one between ScienTex and Kay.

which either of them may have to receive any compensation or consideration whatever by reason of or under the terms of the assignment dated April 27, 1977 . . . ." The 1978 agreement was part of an effort to provide some financial support for Scien-Tex. ScienTex had been unable to obtain financing to carry through the final stages of product development as long as IOS had claims against ScienTex. Kay, as sole shareholder in IOS, was willing to sacrifice the IOS claims against ScienTex to gain new investors for ScienTex. In exchange for the release of IOS' claims, ScienTex promised to use its best efforts to obtain additional financing.

█ Kay argues this agreement never became effective. He claims ScienTex never received additional financing and the waiver therefore never took effect. It does not appear from the 1978 agreement that its effectiveness depends upon the success of ScienTex in obtaining new investors. All that was required of ScienTex was that it utilize its "best efforts" in seeking additional financing. Kay has not alleged that ScienTex failed in its promise to diligently pursue additional investors.

Kay argues that ScienTex rescinded the 1978 agreement. Kay points to a proxy statement issued by ScienTex which he argues is evidence that the 1978 agreement was rescinded. We see nothing in the proxy statement which would support Kay's argument. The portions of the statement relied on by Kay discuss a transaction entirely distinct from the 1978 agreement. The transaction was between Kay and purchasers of Kay's stock, a transaction to which ScienTex was not a party. The proxy statement does not support Kay's argument that the 1978 agreement which extinguished the debt never became effective.

The only evidence that the 1978 agreement did not extinguish the debt is the very fact that the stock transfer took place in 1979. There are two possible explanations for the stock transfer to IOS in 1979—the debt was still outstanding, or Kay acquired the stock in bad faith, he being the chairman of the board of directors for both IOS and ScienTex at the time. The former explanation supports Kay's argument that the 1977 debt was outstanding in 1979. Yet we think this a slender reed, too slender to alone support summary judgment in favor of Kay in the face of the substantial evidence that the debt was extinguished in 1978.

We find that issues of material fact remain regarding the exemption of the IOS transaction from 16(b) scrutiny. We therefore reverse the district court's summary judgment in favor of Kay on this part of the cross appeal.

3. Trading Through Nominees.[6]

█ Kay's assistant, Sidney Bradpiece, testified that all the stock he owns he received from Kay. Kay never owned unrestricted stock in his name, yet the records indicate Bradpiece owns 18,000 shares of unrestricted ScienTex stock. In light of this evidence, ScienTex concludes that Kay must have been trading stock in the name of others. That conclusion would explain how Bradpiece got unrestricted stock consistent with his testimony that all the stock he owns he got from Kay.

Kay offers an alternate explanation. He argues that the unrestricted stock now owned by Bradpiece was once restricted and only became unrestricted through the passage of time. That explanation is unsatisfactory in light of documentary evidence from ScienTex which shows that the unrestricted shares owned by Bradpiece were derived from certificates which were not in

---

**6.** As part of its claim that Kay traded stock through nominees, ScienTex points to testimony by Kay regarding a transaction with one Tony Doria. Kay testified that a now-deceased friend, Doria, gave him 10,000 shares of Scien-Tex to sell, with the proceeds used as a loan to ScienTex. He also testified that the loan was repaid.

ScienTex argues that this is evidence that Kay was trading through nominees. We disagree. Even with all factual inferences in favor of ScienTex, there is no indication the Doria transaction was other than what Kay said it was: The sale of stock by a friend who loaned the proceeds to ScienTex and was repaid.

Kay's name and were unrestricted at the time Bradpiece acquired them.

Given the conflicting explanations for the unrestricted stock held by Bradpiece and the evidence supporting the ScienTex explanation, we find that summary judgment in favor of Kay was improper. We reverse the district court on this part of the cross appeal.

## CONCLUSION

The overissuance of shares to Harry Kay was a transaction within the ambit of 15 U.S.C. § 78p(b). The district court's grant of summary judgment on that issue is affirmed. Issues of material fact remain regarding the stock acquisition by IOS and regarding trading by Kay through nominees. The district court grant of summary judgment on those issues is reversed. Each party shall bear their own costs.

AFFIRMED in part, REVERSED in part, and remanded.