Thomas R. DREILING, on behalf of INFOSPACE, INC., Plaintiff,

v.

Naveen JAIN and Anuradha Jain, husband and wife, and their marital community, the Jain Family Irrevocable Trust, the Naveen Jain Grat No. 1 Trust, and the Anuradha Jain Grat No. 1 Trust, Defendants,

and

Infospace, Inc., Nominal Defendant.

No. C01–1528P.

United States District Court, W.D. Washington.

Aug. 22, 2003.

William H. Beaver, Jr., Karr Tuttle Campbell, Seattle, WA, for Naveen Jain Grat No 1 Trust, Defendant.

Beth Ann Colgan, Harry H. Schneider, Jr., Brent Snyder, Perkins Coie, Seattle, WA, for Jain Family Irrevocable Trust, Defendant.

Timothy P Crudo, Paul H Dawes, David M. Friedmam, Latham & Watkins, San Francisco, CA, Mark Maynes, Stokes Lawrence, Seattle, WA, Kevin Michael Paulich, Wolfstone, Panchot & Block, Seattle, WA, John C. Tang, Aaron Levine & Associates, Washington, DC, for InfoSpace Inc, Interested Party.

Judith A Endejan, Graham & Dunn, Seattle, for Seattle Times Company, Intervenor.

Christine E Gardiner, Karr Tuttle Campbell, Seattle, for Anuradha Jain Grat No 1 Trust, Defendant.

Douglas W Greene, Barry M. Kaplan, Perkins Coie, Seattle, for Kellett Partners LP, Stiles A Kellett, Jr, Defendants.

Arthur W. Harrigan, Jr., G. Val Tollefson, Danielson Harrigan & Tollefson, Seattle, WA, for Anuradha Jain, Defendant.

Jonathan P Meier, Stephen John Sirianni, Richard E. Spoonemore, Sirianni & Youtz, Seattle, WA, for Thomas R Dreiling, Plaintiff.

Elaine L Spencer, Graham & Dunn, Seattle, WA, for Seattle Times Company, Intervenor.

## ORDER GRANTING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

PECHMAN, District Judge.

The Court having concluded as a matter of law that Defendants are liable for short-swing trades, Plaintiff moves for entry of judgment against Defendants Naveen and Anuradha Jain ("the Jains" or "Jain Defendants"). (Dkt. No. 140.) The Jain Defendants move for partial summary judgment that they engaged in no short-swing trades, and alternatively that they realized no profit on the trades. (Dkt. No. 196.) Plaintiff moves to strike numerous declarations, exhibits, and briefing by Defendants as impermissibly seeking reconsideration of the Court's prior order on liability. (Dkt. No. 198.) Because Defendants may not attempt to relitigate liability at this stage of the proceeding, Plaintiff's motion to strike is GRANTED in part. Because the Jain Defendants engaged in short-swing trades by transferring for no cost millions of shares from Trust accounts to personal accounts, they are required to disgorge the profit from these trades. Accordingly, Plaintiff's motion for entry of judgment is GRANTED and the Jain De-

fendants' motion for partial summary judgment is DENIED.

## BACKGROUND

On the parties' stipulation to present the issue of liability to the Court on summary judgment, the Court concluded that the Jain Defendants engaged in prohibited short-swing trades in violation of Section 16(b) of the 1934 Securities and Exchange Act, 15 U.S.C. § 78p(b). At issue now is the Jain Defendants' disgorgement of the profit from their short-swing trades, as well as prejudgment interest on that profit. In its prior order, the Court concluded that, in December 1998, Mr. Jain purchased, for the purposes of Section 16(b), 1,000,000 shares of InfoSpace stock through his agreement to place Trust shares into an escrow account to satisfy a personal obligation. The Court also concluded that, on May 24, 1999, the Jains purchased 2,490,472 shares of InfoSpace stock by transferring these shares from the Trusts to their personal brokerage accounts. There is no dispute regarding the Jains' sale of InfoSpace stock within six months of the above purchases. On April 6, 1999, the Jains sold 1,000,000 shares of InfoSpace stock, receiving $85,600,000.00. On April 12, 1999, the Jains sold 210,000 shares of InfoSpace stock, receiving $17,955,000.00. On May 13, 1999, the Jains sold 1,800,000 shares of Infospace stock, receiving $98,966,696.05. In light of this Court's prior order, and accounting for stock splits, the Jains within six months purchased more shares than they sold, so that all profits realized from the above sales of $202,551,696.05 must be disgorged.

## ANALYSIS

This matter comes before the Court on summary judgment. Summary judgment is not warranted if a material issue of fact exists for trial. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Summary judgment will not lie if ... the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### I.  Plaintiff's Motion to Strike

Plaintiff moves to strike: (1) 15 declarations filed by Defendants on June 23, 2003, except for paragraphs 1–5, 16–17, 28, and 29, 44 of the Naveen Jain Declaration; (2) all exhibits to these declarations except for No. 25 to Mr. Jain's Declaration; (3) page 1 through page 11 ln. 10, and page 15 ln. 8 through page 20 ln. 17, of Mr. Jain's opposition to Plaintiff's motion for entry of judgment; (4) the Anuradha Jain and Trusts' opposition to the motion for entry of judgment; and (5) the Jain Defendants' motion for partial summary judgment.

The Court largely agrees with Plaintiff that the majority of Defendants' briefing is an untimely attempt to reconsider this Court's summary judgment order on liability. The Court has already denied reconsideration of liability, and all of the above motions, declarations, and exhibits come outside the ten-day period for reconsideration. Local Rule CR 7(h)(2). Anuradha Jain and the Trusts submit a brief that contests that there was a change in beneficial ownership, even though this issue was decided on summary judgment. Mr. Jain also contends that there is no purchase without an exchange of consideration, even though this was also addressed on summary judgment. Mr. Jain again raises the argument, rejected on reconsideration, that there was no purchase because the

transactions were rescinded. Defendants make numerous new arguments regarding how trusts are regulated under Washington law, none of which were pled on summary judgment, and none of which are relevant to a determination of liability or damages under Section 16(b). In pari delicto is a new defense to liability that was not pled or argued on summary judgment or reconsideration. In sum, Defendants raise issues already decided, as well as new arguments, well past the date for reconsideration. The Court will not entertain these untimely submissions and allow Defendants to relitigate liability.

The only issue properly before the Court at this time is the question of judgment. Accordingly, Plaintiff's motion to strike is GRANTED in part. The Court strikes the 15 declarations filed by Defendants on June 23, 2003, and all exhibits to these declarations, except for paragraphs 5, 28, and 29 and Exhibit No. 25 of the Naveen Jain Declaration. Pages 1 through 11 ln. 10 and page 15 ln. 20 through page 20 ln. 17 of the Jains' opposition to Plaintiff's motion for entry of judgment are stricken. The Court strikes pages 2 to 11 ln. 6 of Anuradha Jain and the Trust's opposition to Plaintiff's motion for entry of judgment. The Court strikes page 6 ln. 10 to page 10 ln. 4, and page 11 ln. 16 to page 14 ln. 6, of the Jain Defendants' motion for partial summary judgment.

## II. Entry of Judgment

█ Section 16(b) was enacted for the purpose of preventing the unfair use of information which may have been obtained by a statutory insider through his or her relationship to the issuing corporation. *Kay v. Scientex Corp.*, 719 F.2d 1009, 1012 (9th Cir.1983). Congress recognized that short-swing speculation by stockholders with advance, inside information would threaten the goal of the Securities Exchange Act to insure the maintenance of fair and honest markets. *Id.* Section 16(b)

was aimed at protecting the public by preventing directors, officers, and principal stockholders of a corporation from speculating in the stock on the basis of information not available to others. *Id.* (citations and quotations omitted). Under the statute, all profit realized by the short-swing trades is disgorged to the corporation, and the Court may also allow recovery of prejudgment interest. *Whittaker v. Whittaker Corp.*, 639 F.2d 516, 522, 533 (9th Cir.1981), *cert. denied*, 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 473 (1981). Section 16(b) is a strict liability statute that "operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Magma Power Co. v. Dow. Chem. Co.*, 136 F.3d 316, 320–21 (2d Cir.1998).

### A. Calculating profit

█ "For the purpose of preventing the unfair use of information which may have been obtained by ... [an insider], any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security ... within any period of less than six months ... shall inure to and be recoverable by the issuer." 15 U.S.C. § 78p(b). "Profit" is understood in its ordinary sense as "the excess of returns over expenditures ... the excess of the price received over the price paid for the goods sold." *S & S. Realty Corp. v. Kleer–Vu Indus., Inc.*, 575 F.2d 1040, 1043 (2d Cir. 1978).

█ In calculating the profit realized as a result of stock purchases, courts use the "lowest purchase price, highest sale price" method. *Whittaker*, 639 F.2d at 530. Under this rule, called the *Smolowe* rule after the leading case on the matter, the highest sales price is matched with the lowest purchase price in any given six month period. *Id.* at 530–31. In analyzing the legislative

history of the statute, the court in *Smolowe* concluded:

> The statute is broadly remedial. Recovery runs not to the shareholder, but to the corporation. We must suppose that the statute was intended to be thoroughgoing, to squeeze all possible profits out of stock transactions, and thus to establish a standard so high as to prevent any conflict between the selfish interest of a fiduciary officer, director, or stockholder and the faithful performance of his duty. The only rule whereby all possible profits can be surely recovered is that of lowest price in, highest price out within six months.

*Smolowe v. Delendo Corp.*, 136 F.2d 231, 239 (2d Cir.1943), *cert. denied,* 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943).

■ Calculating the profit in this case is straightforward. The Jains paid nothing for shares that were transferred, therefore their purchase price is $0. Within six months of acquiring the InfoSpace shares for nothing, the Jains sold shares for $202,551,696.05. Consistent with the definition of profit and the "lowest in, highest out" rule, therefore, the Jains' profit is calculated at $202,551,696.05.

The Jains contend that, even though they acquired the InfoSpace shares for nothing, the Court should nonetheless impute a price to the shares because the Jains ultimately returned the shares to the Trust. A number of cases recognize that a value may be imputed to shares when non-monetary consideration is given. For example, courts will place a dollar value on intangible assets or non-monetary consideration, such as hours worked for a corporation in return for stock. *See, e.g., Truncale v. Blumberg,* 88 F.Supp. 677 (S.D.N.Y. 1950). In this matter, however, the Jains gave neither monetary nor intangible consideration for the InfoSpace shares. The shares were transferred to the Jains for no consideration. As the Court decided on

summary judgment and reconsideration, such a transfer—even if it was an unauthorized transfer, with no consideration given, and later rescinded—can be a purchase for the purpose of Section 16(b) because of the possibility for speculative abuse. Because no consideration was given for the InfoSpace shares, the Jains' cost was nothing, and therefore to "squeeze all possible profits out of" the stock transactions requires disgorgement of $202,551,696.05.

Defendants' proposal that the Court should impute the market price of the InfoSpace shares at the time the Jains transferred the shares from the Trusts to themselves, or alternatively at the time the Jains returned the shares to the Trusts, is particularly problematic. This suggestion fails to capture the profit that the Jains realized from the transfers, because the market price of the shares at the time of transfer or return is not related to the profit that an insider might make in transferring shares to a personal account. To illustrate, an insider might transfer a thousand shares valued at $10 each, speculate with those shares to make a profit by buying and selling when the shares are valued at less than $10 each, and then return the shares when they are again valued at $10 each. In such a case, the profit made by the insider through speculation has no relation to the market value of the shares at the time of transfer or return. Such an application of Section 16(b) not only fails to disgorge the profits realized by the transfer, but invites abuse and manipulation of the statute.

■ The Jains argue that Plaintiff's proposed judgment is unconstitutional and punitive because it forces disgorgement of all profit on the sale of the InfoSpace shares even though the Jains eventually returned an equal number of shares to the Trusts. Because the share transfers were unauthorized, the Jain Defendants contend

that had they not returned the shares, they might have faced liability to the Trusts for conversion. The Jains insist that, because the transfers were rescinded, disgorgement of all profit would in effect mean the Jains paid twice for the shares at issue.

The Jains cannot use their conduct in avoiding liability to the Trusts under state or other federal law as a method to avoid Section 16(b) disgorgement. "The determination that an act is illegal under state law and the Internal Revenue Code does not make the rescission of that act free from federal securities law problems.... The exercise of the duty to rescind ... does not immunize the rescinding transaction from securities law liability." *Oliff v. Exchange Int'l Corp.*, 449 F.Supp. 1277, 1293 (N.D.Ill. 1978), *aff'd*, 669 F.2d 1162 (7th Cir.1980), *cert. denied sub nom.*, 450 U.S. 915, 101 S.Ct. 1358, 67 L.Ed.2d 340 (1981). The Jains' conduct in transferring shares simply subjected them to multiple legal obligations. "The fact that other state or federal laws may have affected a penalty or caused defendants in a section 16(b) proceeding to take a particular action does not prevent a finding of section 16(b) liability." *Id.* As this Court ruled on summary judgment and on reconsideration, the Jains' transfers of the stocks from the Trusts and subsequent short-swing sales subjected them to liability because of the possibility of speculative abuse. The collateral obligations the Jains acquired regarding the transferred shares, and the actions they took in response to these obligations, do not impact the calculation of short-swing profits. Therefore, the profit realized by the Jains by short-swing trades is $202,551,696.05. Although courts recognize that Section 16(b) may be harsh in application, Defendants cite no authority for finding the statute unconstitutional. Section 16(b) has been applied for dec-

ades, and this Court declines the invitation to strike the statute as unconstitutional.

## B. Prejudgment Interest

Whether prejudgment interest is awarded as part of a Section 16(b) recovery is a question of fairness to be answered by balancing the equities. *Whittaker*, 639 F.2d at 533. Although prejudgment interest is generally considered a part of Section 16(b) recovery, it is denied when its exaction would be inequitable. *Id.* The burden is on the insider to "show there is an overriding inequity in allowing interest in order to overcome the granting of interest." *Id.*

In weighing the equities, the Court takes into account several factors: (1) whether the insider acted innocently or knowingly; (2) whether the insider repaid the corporation promptly upon demand; and (3) whether there has been substantial delay caused by the insider. *Whittaker* at 533–34.

### 1. Appropriateness of Prejudgment Interest

The Court's consideration of the first factor is not a one-dimensional question of subjective good or bad faith. *Whittaker*, 639 F.2d at 533. The type and degree of the insider's inadvertence, the position of the insider in the corporation, and other circumstances of each case are considered. *Id.* Even when bad faith may have been absent, interest is still sometimes awarded. *Id.* The insider's good faith must be shown; bare allegations are not sufficient. *Id.*

The Court cannot conclusively determine whether the Jains acted in either good faith or bad faith. However, Mr. Jain's status as a key insider weighs in favor of prejudgment interest. Mr. Jain

was the founder, Chairman of the Board of Directors, and CEO of InfoSpace. The Jains claim that they were victims of a combination of errors and oversights by others. Nonetheless, without the participation of the Jains, the purchases would not have happened. The Jains transferred shares to their personal accounts by signing letters of authorization and claim to have failed to notice the discrepancies in their account statements. Mr. Jain personally signed SEC filings representing that he had placed shares into escrow. Although the Jains may not have acted in bad faith, they clearly were not diligent in their transactions with the Trusts.

The second factor rewards an insider who repays the corporation promptly upon demand. Prompt payment has been taken as betokening good faith and justifying denial of interest, especially when the prompt repayment means the corporation has not lost use of the money for a long time. *Whittaker*, 639 F.2d at 534.

The second factor favors the Plaintiff. The Jains did not offer to repay the profits upon filing of the lawsuit. Though it is important to note that the corporation did not decide to bring suit, the corporation nonetheless has been deprived of the use of the money at issue for several years because of the Jains' actions.

The third factor in balancing the equities is the length of time involved. When there has been substantial delay between transactions and complaint or between complaint and judgment, courts consider who was responsible for the delay an important factor in allowing interest for such periods. *Whittaker*, 639 F.2d at 534.

Considerations of delay favor an award of prejudgment interest. Several years have passed since the complaint and this ruling on judgment. The Court ultimately agrees with the liability and judgment arguments that Plaintiff advances in this litigation. While it is understandable that Defendants would litigate this matter, they are nonetheless responsible for the delay between complaint and judgment.

Defendants have failed to meet their burden of showing that an award of prejudgment interest is inequitable. The factors to weigh in deciding to award prejudgment interest favor Plaintiff. Defendants have enjoyed the profits from the short-swing trade for years, and have had the opportunity to invest and earn from these profits. Accordingly, the Court GRANTS Plaintiff's request for prejudgment interest.

### 2. Calculation of Interest

In awarding prejudgement interest, the Ninth Circuit favors application of the federal post-judgment interest rates specified in 28 U.S.C. § 1961. *Western Pacific Fisheries, Inc. v. S.S. President Grant*, 730 F.2d 1280, 1289 (9th Cir.1984). The parties do not dispute that interest for transactions completed on April 6 is calculated at 4.732% per year, compounded yearly, and for transactions completed on May 24, 1999 the interest is 4.727%. Neither have the parties disputed that interest should be awarded from the date of the sales which produced the profit that the Jains have since held.

The Jains realized $85,600,000.00 in profit from the April 6, 1999 sale. The Court awards prejudgment interest at a rate of 4.732% per year from the date of the sale to the date of this order. Defendants have not contested that the calculation of this award amounts to $18,297,057.00 plus $13,352.00 for each day after June 13, 2003. Therefore, the Court awards $18,297,057.00 plus $921,288.00 in prejudgment interest, for a total of $19,218,345.00 on the April 6, 1999 sale.

The Jains realized $116,951,696.05 in profit from the April 6 and May 13, 1999 sales and the May 24, 1999 purchase. The

Court awards prejudgment interest of 4.727% per year on this amount from the date of the purchase to the date of this order. Defendants have not contested that the calculation of this award amounts to $24,095,542.98 plus $18,219.26 for each day after June 13, 2003. Therefore, the Court awards $24,095,542.98 plus $1,257,128.94, for a total of $25,352,671.92 in prejudgment interest on the May 24, 1999 purchase.

### C. Total Judgment

The Court orders disgorgement of $202,551,696.05 in profit. Prejudgment interest on this sum amounts to $44,571,016.92. Total judgment is for $247,122,712.97.

### III. Separate Judgment Under Rule 54(b)

Plaintiff requests that the Court enter separate judgment on the claims against the Jain Defendants in accordance with Fed.R.Civ.P. 54(b). "[T]he Court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed.R.Civ.P. 54(b). The only Defendants remaining after resolving this motion are the Trusts. Withholding judgment until the claims of the Trusts are resolved only serves to delay any appeal of the claims of the Jain Defendants, who have already indicated through a motion for interlocutory appeal that they wish to appeal this Court's decision. There being no just reason to delay entry of judgment, the Court will enter separate judgment on the claims against the Jain Defendants.

### CONCLUSION

The Jain Defendants engaged in short-swing trades by transferring for no consideration millions of InfoSpace shares from Trust accounts to personal accounts within six months of selling InfoSpace shares. Under Section 16(b) the Jain Defendants are required to disgorge the profit from these trades. Accordingly, Plaintiff's motion for entry of judgment is GRANTED and the Jain Defendants' motion for partial summary judgment is DENIED. The Court orders disgorgement of $202,551,696.05 of profit from short-swing trades. Prejudgment interest on this sum amounts to $44,571,016.92, for a total judgment of $247,122,712.97. The Court authorizes publication of notice of Plaintiff counsel's forthcoming request for fees in The Wall Street Journal and The Seattle Times.