**Harry LEWIS, Appellant,**

v.

**MELLON BANK, N.A., et al.**

**No. 74–1743.**

United States Court of Appeals, Third Circuit.

Argued Feb. 12, 1975.

Decided April 10, 1975.

Morris J. Levy, New York City, Michael P. Malakoff, Berger & Kapetan, Pittsburgh, Pa., for appellant.

J. Tomlinson Fort, Edward Hoopes, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Mellon Bank, N.A., John H. Hill, William F. Hill, II, and John C. Hill.

Before SEITZ, Chief Judge, and ADAMS and GARTH, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The plaintiff in an action for the recovery of short-swing profits under section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b) (1970), appeals a final judgment of the district court, entered pursuant to defendants' motion for summary judgment, dismissing the complaint.

The plaintiff, Harry Lewis, is a stockholder of PPG Industries, Inc. ("PPG"). Defendants are the executors of the estate of David G. Hill. Mr. Hill was an officer and director of PPG in the period between February 17, 1954, and Septem-

ber 28, 1971, at which time he resigned. On September 29 and 30, 1971, Mr. Hill exercised options, granted to him in the course of his employment with PPG and more than six months prior to his resignation, acquiring 7,282 shares of PPG common stock.

During the same two day period in September, Mr. Hill sold 6,800 shares of PPG common stock.[1] In October, 1971, Mr. Hill duly filed a report of the September transactions with the SEC on form 4, 17 C.F.R. § 249.103 (1974), in accordance with the instructions on that form.

The issues on this appeal are whether Mr. Hill, although retired, was still as a matter of law an "insider" of PPG subject to the proscriptions of section 16(b), and whether his September transactions therefore produced "short-swing" profit which inured to and is recoverable by PPG or a shareholder acting in its behalf.

Section 16(b) provides, in pertinent part:

(b) For the purpose of preventing the unfair use of information which may have been obtained by [the 10% shareholder], director or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of the issuer . . . within any period of less than six months, . . . shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such [insider]. . . . 15 U.S.C. § 78p(b) (1970).

The section presumes that corporate insiders always have an advantage over "outsiders" when trading in the company's stock since they have access to information not available to the general public. The section seeks to deter use of

---

[1] The record does not establish when the 6,800 shares were purchased. However, in view of plaintiff's argument, later considered, we assume that they were not purchased at a time that would render defendants liable under section 16(b) on any theory other than the one relied upon by plaintiff in this case—that a

retired director's post-retirement purchase and sale or sale and purchase of equity securities of the company of which he was formerly a director can generate short-swing profits which accrue to the company under section 16(b).

this inside information or, indeed, to limit the insider's competitive advantage by proscribing paired purchases and sales or sales and purchases by insiders within six months of each other. Suits for recovery of the profits from paired transactions within the six month "no-man's land" may be brought by shareholders of the issuer.

1. *Plaintiff's first contention on appeal: the section 16(a) reporting requirement.*

■ Plaintiff's first argument on appeal is that section 16(b) should be read as applying to transactions effected by a corporate director from the date of his retirement from the corporation to the end of the calendar month in which his retirement occurred. This construction would cause liability under section 16(b) to coincide with the period for which section 16(a) requires the filing of a report with the SEC.

Section 16(a) requires directors of companies subject to the registration requirements of the Exchange Act to file reports pertaining to their ownership of the companies' securities with the SEC ten days after the end of every calendar month in which a change in their ownership has occurred. In these reports such directors must disclose their holdings at the end of the month of any class of equity securities of the companies of which they are directors as well as the changes in their holdings within the month. On its face the section would appear to require reports of directors for the month of retirement even though part of such reports might cover post-retirement transactions. Indeed, this appears to be the construction which the SEC has adopted.[2]

In essence, plaintiff argues that the section 16(a) reporting requirement has no purpose other than to provide fodder for section 16(b) suits to recover short-swing profits. He therefore contends that the sections are interdependent and should be construed so that the duty under the former and the liability under the latter are coextensive. We do not agree.

We believe that Congress intended sections 16(a) and 16(b) to operate independently. We find that section 16(a) was primarily meant to deter officers, directors, and controlling shareholders from engaging in unfair practices by placing their trading activities with respect to the equity securities of the companies of which they were "insiders" under the spotlight of public scrutiny.[3] We conclude section 16(b) was meant to prevent only a very narrow but highly visi-

---

2. Thus, on form 4 it is stated that the form must be filed by "[e]very person who at any time during any calendar month" was a director. *See also* Robert S. Smith, ['70–'71 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 78,-008.

3. *See* H.R.Rep. No. 1383, 73d Cong., 2d Sess. 5–15 (1934), where it is stated:

A renewal of investors' confidence in the exchange markets can be effected only by a clearer recognition upon the part of the corporate managers of companies whose securities are publicly held of their responsibilities as trustees for their corporations. Men charged with the administration of other people's money must not use inside information for their own advantage. Because it is difficult to draw a clear line as a matter of law between truly inside information and information generally known by the better-informed investors, the most potent weapon against the abuse of inside information is full and prompt publicity. For that reason, this bill requires the disclosure of the corporate holdings of officers and directors and stockholders owning more than 5 percent of any class of stock, and prompt disclosure of any changes that occur in their corporate holdings. Short selling and selling against the box by insiders are prohibited. . . . The Committee is aware that these requirements are not air-tight and that the unscrupulous insider may still, within the law, use inside information for his own advantage. It is hoped, however, that the publicity features of the bill will tend to bring these practices into disrepute and encourage the voluntary maintenance of proper fiduciary standards by those in control of large corporate enterprises whose securities are registered on the public exchanges.

In the same report it is later stated that the section 16(a) reporting requirement " . . . is to give investors an idea of the purchases and sales by insiders which may in turn indicate their private opinion as to prospects of the company." *Id.* at 5–26.

ble form of unfair dealing by corporate insiders. *See* Reliance Electric Co. v. Emerson Electric Co., 404 U.S. 418, 92 S.Ct. 596, 30 L.Ed.2d 575 (1971). We therefore decline to construe section 16 so that in the case of retired directors who engage only in post-retirement transactions, the directors' liability under section 16(b) will coincide with their continuing duty to report in the month of retirement under section 16(a).

### 2. *Plaintiff's second contention: the objectives of section 16*

Plaintiff's second contention is that his construction of section 16 furthers the objectives of that section. He therefore urges us to expand upon Feder v. Martin Marietta Corp., 406 F.2d 260 (2d Cir. 1969), to hold that a director who engages in a paired transaction—both purchase and sale—within a six month period after he resigns his directorship is liable to disgorge profits from that transaction under section 16(b).

In *Martin Marietta*, the Second Circuit construed section 16(b) as applicable to the short-swing profits realized by a director of an issuer as the result of paired purchases and sales of the issuer's stock within a six-month period, notwithstanding the termination of the directorship prior to the time of sale. The rule that emerges from *Martin Marietta* is that directors may be liable for section 16(b) short-swing profits even though their employment as directors coincides with only one half of the paired transaction—either the purchase or sale.

In *Martin Marietta*, the Second Circuit noted that the "judicial tendency" was to construe section 16 so as to promote the congressional purpose, "even departing where necessary from the literal statutory language." *Id.* at 262. But that Circuit has also made it clear that such liberal construction is only appropriate in those cases in which "the relevant provision is . . . intrinsically ambiguous or in which there are alternative plausible applications of the provision to a particular factual situation." Lewis v. Varnes, 505 F.2d 785, 789 (2d Cir. 1974).

Assuming that under section 16(b) a director can be such either at purchase or at sale for liability to attach, we nevertheless believe that section clearly contemplates that the director hold his directorship during at least one portion of the paired transactions. The section applies to transactions effected by a "director," not a "past director," or "retired director." Plaintiff presents us with a situation where transactions were effected by a person who was a director neither at purchase nor at sale. We think that the section is unambiguous in this respect and that plaintiff's interpretation is therefore implausible.

Plaintiff also argues that section 16 is concerned with deterring those who stand in a fiduciary relationship with the rest of the corporation's shareholders from engaging in transactions which have even the appearance of unfairness. He contends that inasmuch as the shares acquired in this case were purchased by exercise of options granted Mr. Hill while he was a corporate insider, there is as much potential for "speculative abuse" as there is when a director actually acquires shares prior to this resignation. He further argues that one who has recently resigned his post as director of a corporation is as likely to trade on the basis of inside information as one still serving as a corporate director.

The courts have long recognized that section 16(b)'s scheme for the protection of "outside" shareholders from potentially abusive use of non-public information by corporate insiders involves application of a somewhat arbitrary but objective set of rules to insider trading. Bershad v. McDonough, 428 F.2d 693 (7th Cir. 1970); Smolowe v. Delendo Corp., 136 F.2d 231 (2d Cir. 1943). The section is not designed to curb all insider abuses, nor is it concerned with the good faith of the insiders or lack thereof. Thus in *Reliance Electric, supra,* the Supreme Court indicated that in section 16(b),

> . . . Congress did not reach every transaction in which an investor actually relies on inside information. A person avoids liability if he does not

meet the statutory definition of an "insider," or if he sells more than six months after purchase. Liability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability under § 16(b). The question is, rather, whether the method used to "avoid" liability is one permitted by the statute. 404 U.S. at 422, 92 S.Ct. at 599. In *Reliance Electric*, the owner of more than 10% of the stock of a corporation sold off his holdings in a step transaction designed to minimize section 16(b) liability—the first step left the shareholder with 9.96% of the company's stock; in the second step, the shareholder sold off the remainder. The Supreme Court held that notwithstanding the motive behind the structure of the sale, only the profits from the first step were recoverable under section 16(b).

It is true, as plaintiff argues in the case before us, that one who has but recently resigned his position as officer or director of a company is in a unique position because he is likely to have inside information about that company and because, if he trades in the company's stock on the basis of that information, he will have an unfair advantage over other investors.

But it is no less true that there is a substantial likelihood that a director who retains his directorship will trade on the basis of inside information a day after the six months since his last transaction has expired, or that the 10% shareholder in the *Reliance Electric* situation will trade on the basis of inside information. In the words of the Supreme Court, "Congress did not reach every transaction in which an investor actually relies on inside information." In the absence of an explicit proscription of transactions such as those involved in this case, and we find none, we decline to hold defendants liable for section 16(b) short-swing profits on the grounds that a recently

retired director is, by law, still an "insider" under that section.[4]

 We hold that a purchase and sale or sale and purchase, both of which are effected by a corporate director after his bona fide resignation of his directorship, do not generate short-swing profits recoverable under section 16(b).

Our decision on this issue makes it unnecessary to deal with other issues raised on this appeal.

The judgment of the district court will be affirmed.

---

**4.** In this respect it should be noted that on appeal defendants point out that no attempt was made before the district court to establish that Mr. Hill's resignation was a sham in the sense that he continued to act as a director. There is therefore no basis for holding that Mr. Hill was in fact if not in law an "insider."