**JAMMIES INTERNATIONAL, INC. and C.R.A. Realty Corp., Plaintiffs,**

v.

**Robert C. NOWINSKI and Bristol–Meyers Company, Defendants.**

**No. 87 Civ. 4349 (JES).**

United States District Court, S.D. New York.

Nov. 28, 1988.

David Lopez, P.C., New York City, for plaintiff C.R.A. Realty Corp.; David Lopez, of counsel.

Levy & Levy, New York City, for plaintiff Jammies Intern., Inc., Morris Levy, of counsel.

Berger & Steingut, New York City, for defendant Robert C. Nowinski; Theodore S. Steingut, of counsel.

Perkins Coie, Seattle, Wash., for defendant Robert C. Nowinski; Ronald L. Berenstain, Joseph E. Bringman, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Bristol–Meyers Co.; Stephen A. Weiner, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs Jammies International Inc. and C.R.A. Realty Corp. bring this shareholder derivative action against Robert C. Nowinski and Bristol–Meyers Co. ("Bristol") to recover short-swing profits under section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) (1982). Plaintiffs allege that Dr. Nowinski was an officer of Bristol at the time he bought and sold shares of Bristol stock, and that by buying and selling that stock within a six month period Nowinski has violated section 16(b).

Defendant Nowinski has moved for judgment on the pleadings, or in the alternative for summary judgment. However, because both parties have submitted affidavits and deposition testimony in connection with the motion, the Court will treat defendant's motion as one for summary judgment. For the reasons set forth below, defendants' motion is granted.

## FACTS

The following facts are undisputed. Defendant Robert Nowinski is a named Vice President of Bristol and is President of Bristol's Genetic Systems Division, located in Seattle, Washington.[1] *See* Affidavit of

---

1. Dr. Nowinski founded Genetic Systems Corp. in 1981. *See* Affidavit of Robert Nowinski

Robert Nowinski ("Nowinski Aff.") at ¶ 2; Plaintiffs' Exhibit 8. On or about October 21, 1986, Dr. Nowinski sent a letter of intent to exercise options on 31,932 shares of Bristol stock, along with the appropriate forms, to Bristol's New York offices. *See* Nowinski Aff. at ¶ 7. The materials were received by Ms. Pamela Kasa, Bristol's Corporate Secretary, on October 22, 1986. *See* Affidavit of Pamela Kasa ("Kasa Aff.") at ¶¶ 1–2. Thereafter, Ms. Kasa flew to Seattle to attend a business meeting at the offices of Genetic Systems. While she was in Seattle, Ms. Kasa agreed to accept Dr. Nowinski's cashier's check for $1,157,346.67 as payment for the options. *See* Nowinski Aff. At ¶ 8; Kasa Aff. at ¶¶ 3–4. Ms. Kasa accepted the check on October 30, 1986, and returned to Bristol's corporate offices in New York on October 31, 1986. Processing of the stock option transaction took place on October 31, 1986. *See* Kasa Aff. at ¶¶ 3–4.

For reasons related to marriage dissolution obligations, Dr. Nowinski sought to sell the Bristol stock he had acquired on the first legally permissible date,[2] *see* Nowinski Aff. at ¶ 6, and instructed his stock broker, Morgan Stanley, accordingly. Morgan Stanley advised Dr. Nowinski that April 29, 1987 was the first date on which he could sell, and indeed Dr. Nowinski sold the Bristol stock on April 29, 1987. *Id.* at ¶¶ 9.3–9.4.

### DISCUSSION

▇ The timing of Dr. Nowinski's sale, when combined with the oddities of the Gregorian calendar and previous judicial pronouncements regarding the length of six months under section 16(b), leave this Court with an issue of first impression

bordering on the metaphysical, *i.e.:* how long is six months when measured from the last day of a month with thirty one days to a month with no corresponding thirty first day.

In *Stella v. Graham–Paige Motors Corp.*, 132 F.Supp. 100 (S.D.N.Y.1955), Judge Dimock defined the period of six months under section 16(b) by taking the date on which the stock was purchased, finding the corresponding date six months later, and then subtracting one day to determine the date on which the six month period terminates. *Id.* 103–04. Any sale taking place prior to that date is a sale within less than six months under 16(b), and subjects the seller to liability.[3] This rule has been adopted by the Second Circuit. *See Colonial Realty Corp. v. MacWilliams*, 512 F.2d 1187, 1188 n. 2 (2d Cir.) (*per curiam*), *cert. denied*, 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 96 (1975).

So, for example, if an officer of a corporation purchased the stock of that corporation on October 30, he should look for the corresponding date in April of the next year, in this example April 30th. Under the rule in *Stella*, the six month period would terminate on April 29th. A purchaser could, therefore, sell on that date without incurring liability, because that period would constitute exactly six months, not less than six months. Under this view, the corresponding six month date of April 30, begins a new six month period and is thus equal to six months plus one day. The *Stella* Court did not, however, have before it the situation here presented where there is no date corresponding to the purchase date in the sixth month following the sale.

In the instant case, assuming that Dr. Nowinski purchased the stock on October

("Nowinski Aff.") at ¶ 2. In 1985, Genetic Systems merged with Bristol. *Id.* at ¶ 4.1. Dr. Nowinski held Genetic Systems stock options prior to the merger. As part of the merger agreement these options were converted into options to purchase Bristol stock. *Id.* at ¶ 4.2.

**2.** Dr. Nowinski appears to have had some knowledge that section 16(b) required him to wait six months before selling. *See* Defendants' 3(g) Statement at ¶ 22.

**3.** In relevant part, section 16(b) states:

any profit realized by [an officer] from any purchase and sale, ... of any equity security of such issuer ... within any period of less than six months, ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such ... officer in entering into such transaction of holding the security purchased ... for a period exceeding six months.

15 U.S.C. § 78p(b) (1982).

31,[4] and sold it on April 29, 1987, because the date of April 31 does not exist, the termination of the six month period cannot be determined in precisely the same manner that *Stella* comtemplates. If *Stella* is to be applied, as this Circuit apparently requires, there are, however, only two possibilities. First, as defendant argues, a purchaser could pick the most logical corresponding date, the last day of April, April 30, to correspond to the last day of October, and then subtract one day. Under this view, April 29, is the last day of the six month period and, under *Stella,* would be the first legally permissible sale date.

Alternatively, and as plaintiffs argue, a purchaser could choose May 1 as the date most closely corresponding to October 31, because it is one day after the thirtieth day of the month. The six month period then terminates on April 30, and that date would be the first legally permissible sale date.

Neither of these views is necessarily inconsistent with *Stella,* and both have a degree of logic to commend them. However, since one date must be chosen as the termination date, this Court finds, for the following reasons, that the more persuasive position is that taken by the defendant. First, it seems more logical to assume that the corresponding date for the last day of a month is the last day of the month six months hence, rather than the first day of the next month. Moreover, section 16(b) is a strict liability provision. A violation of section 16(b) does not require bad faith, or even a knowing and wilful trade based upon inside information. As a matter of policy, however, the draconian penalties of section 16(b) should not be imposed when, as here, there is, to say the least, a confusing ambiguity as to whether its terms have been violated. *Cf. Busic v. United States,* 446 U.S. 398, 406, 100 S.Ct. 1747, 1753, 64 L.Ed.2d 381 (1980); *Adamo Wrecking Co. v. United States,* 434 U.S.

275, 285, 98 S.Ct. 566, 573, 54 L.Ed.2d 538 (1978); *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971); *United States v. Gaggi,* 811 F.2d 47, 58 (2d Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987). This is especially true since section 16(b), although in one sense remedial in nature, is clearly designed to deter insider trading, and therefore is also penal in the sense that the penalties provided are designed to achieve that purpose.

Thus, absent some countervailing policy reason to construe the statute's ambiguity against the defendant, this Court will not penalize defendant for reasonably relying on a perfectly plausible interpretation of section 16(b) based upon the rule in *Stella.*[5] This is especially true since the undisputed facts establish that the defendant structured his conduct so as to comport with what he believed was necessary to comply with the statute.

■ Defendant has also moved for summary judgment on the ground that he actually purchased the stock on October 30, when he delivered a check for the purchase price to Ms. Kasa. A purchase on October 30, and a sale on the following April 29, would concededly be a legal sale under *Stella.*

Plaintiffs argue in opposition, that the evidence shows the purchase did not take place until October 31. In support of their argument plaintiffs cite the Bristol stock option agreement which clearly states that an option to purchase is not exercised until both the purchase price and the proper forms come together at Bristol's New York offices. Further, plaintiffs cite to Bristol's own documents recording the transaction, all of which show a purchase date of October 31. In addition, plaintiffs point out that defendant's original Form 4, filed with the SEC, indicates an October 31 purchase

**4.** Dr. Nowinski also argues that he actually purchased the stock on October 30, 1986, an argument plaintiff hotly disputes. *See infra,* at 192–193. Dr. Nowinski also contends, however, that even if he purchased the stock on October 31, he did not sell within the six month period.

**5.** This interpretation does no "violence to the central purpose of the securities law, since the six-month requirement it implements is essentially an arbitrary legislative guidepost.... [T]he defendant should [not] be penalized for patterning [this transaction] after the formulation, announced in *Stella.*" *Colonial Realty Corp., supra,* 512 F.2d at 1188 n. 2.

date, although defendant later amended the form.

Whether a purchase under section 16(b) has occurred is purely a matter of federal law. *See Riseman v. Orion Research, Inc.,* 749 F.2d 915, 918 (1st Cir.1984). Thus, what the relevant contracts indicate, or what the corporation files reveal as the purchase date, is not dispositive. *See id.* at 918–19; *Piano Remittance Corp. v. Reliance Financial Services, Corp.,* 618 F.Supp. 414, 418–19 (S.D.N.Y.1985). Similarly, the date on a Form 4 is relatively meaningless in determining when a purchase has actually occurred. *See Morales v. Reading & Bates Offshore Drilling Co.,* 392 F.Supp. 41, 44 (N.D.Okla.1975). Instead, the federal law standard for determing whether a 16(b) purchase has occurred is whether the purchaser is irrevocably committed to buy the stock, such that his "rights and obligations have become fixed." *Riseman, supra,* 749 F.2d at 919. "[I]t is at that point that he loses the power to take advantage of any inside information he might later acquire." *Piano Remittance, Corp., supra,* 618 F.Supp. at 419.

On this motion, defendant has the burden of showing that there are no material issues of fact in dispute, and that he is entitled to judgment as a matter of law. The evidence relied upon by the plaintiffs, although not dispositive, does raise a material issue of fact as to whether Dr. Nowinski was irrevocably bound to proceed with the transaction on October 30th. Defendant has not submitted evidence sufficient to rebut plaintiffs' evidence, and thus, defendant's motion on this ground is denied.

 Finally, defendant argues that even if he purchased and sold within a six month period, he is not subject to section 16(b) liability because he was not an officer of the corporation during the time the transactions took place.

An SEC regulation, 17 C.F.R. 240.3b–2 (1987), defines the word officer under section 16(b) to include the vice-president of the issuing corporation. It is undisputed that Dr. Nowinski has the title of vice-president of Bristol. What Dr. Nowinski argues, however, is that the title of vice president is purely an honorary one. Thus,

he argues, this Court should consider a judicially created exception to the plain language of the regulation. It is true that the Ninth Circuit has recognized an exception for purely honorary titles, and allows District Courts to look behind the nominal title of the defendant to determine if his position involves the kind of policy making function which would yield him access to inside information. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Livingston,* 566 F.2d 1119 (9th Cir.1978). Similar language may be found in the opinions of this Circuit. *See Colby v. Klune,* 178 F.2d 872, 873 (2d Cir.1949).

However, the Second Circuit has also cautioned that the question of whether a person is an officer for purposes of 16(b) often turns on factual issues, in particular on questions of credibility, that are not appropriately resolved on a motion for summary judgment. *See id.* The wisdom of this view is evident in the instant case where both parties have done little more than make conclusory assertions that defendant Nowinski did, or did not, have access to inside information. Because the resolution of the question regarding defendant's status as an officer involves disputed issues of material fact, defendant's motion for summary judgment on that ground is denied.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment on the grounds that he is not an officer, and that he purchased the stock on October 30, 1986 is denied.

Defendant's motion for summary judgment on the ground that a purchase of stock on October 31, 1986, and a sale of the same stock on April 29, 1987, is not a purchase within less than six months under section 16(b) is granted.

The clerk is directed to dismiss the complaint and close the above-captioned action.

It is SO ORDERED.