C.R.A. REALTY CORP., Plaintiff,

v.

The GOODYEAR TIRE & RUBBER COMPANY; General Oriental (Bermuda I) Limited Partnership; General Oriental (Delaware) Limited Partnership; General Oriental Investments, Limited; General Oriental Holdings Limited; General Oriental Limited; General Oriental (Delaware I) Corp.; James M. Goldsmith; Interscope Securities II, Inc.; Interscope Securities III, Inc.; Interscope Securities IV, Inc.; Cavenham Holdings, Inc.; Amcor Funding Corporation; G.O. Partners "A" Limited; Hanson Group (USA) Ltd.; Fischer Brothers Financial and Development Company II., Defendants.

No. 87 Civ. 1210(MEL).

United States District Court,
S.D. New York.

Feb. 3, 1989.

David Lopez, P.C., New York City, for plaintiff; David Lopez, Lawrence N. Weiss and Nancy E. Wolff, of counsel.

Weil, Gotshal & Manges, New York City, for defendants; Dennis J. Block, Jonathan M. Hoff, Richard W. Slack and George F. Meierhofer, of counsel.

LASKER, District Judge.

General Oriental (Bermuda I) Limited Partnership ("Bermuda I"), General Oriental (Delaware I) Limited Partnership ("Delaware I"), and all other defendants but one (all are limited or general partners of Delaware I and Bermuda I and collectively described in this opinion as "Claim Defendants")[1] move to dismiss the complaint for failure to state a claim under F.R.Civ.P. 12(b)(6).

This derivative action arises from the Claim Defendants' attempt to acquire control of the remaining defendant Goodyear Tire and Rubber Company ("Goodyear"). The takeover bid failed, but as part of a subsequent comprehensive restructuring of the company, Goodyear repurchased shares of its own outstanding stock from Claim Defendants within six months after it had sold the stock to them. Plaintiff C.R.A. Realty Corp. ("CRA"), a Goodyear shareholder, instituted this derivative action seeking to disgorge the short-swing profits made on the resale of the Goodyear stock by the Claim Defendants, allegedly in violation of § 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b). CRA also asserts that the Claim Defendants violated § 16(a), 15 U.S.C. § 78p(a), by failing to report that the partnership or joint venture which Delaware I and Bermuda I allegedly formed (the "Claim Partnership") qualified as a ten percent beneficial owner of Good-year stock. Defendants move to dismiss on all counts.

*I.  The § 16(b) Claims*

CRA alleges that Delaware I and Bermuda I formed the Claim Partnership[2] for the purpose of acquiring stock and control of Goodyear and that the Claim Partnership became a "beneficial owner" of more than ten percent of the outstanding Goodyear stock. According to CRA, it follows that the Claim Defendants are liable under § 16(b) to repay Goodyear for the short-swing profits that they subsequently made on the sale of their Goodyear stock. Section 16(b) provides:

> For the purpose of preventing the unfair use of information which may have been obtained by such *beneficial owner,* director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase or sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months ... shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months.

(Emphasis added.) The term "beneficial owner" is first referred to in the preceding section, § 16(a), which requires that:

> Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of equity security (other than an exempted security) which is registered pursuant to section 781 of this title, or who is a director or an officer of the issuer of such security,

---

**1.** C.R.A. Realty Corp. identifies two groups of defendants, each described in different claims in the Complaint (the "Claim I" and "Claim III" Groups). Both the Claim I and the Claim III Groups include Delaware I, Bermuda I and various other Claim Defendants. For convenience I refer to both groups as the "Claim Defendants" because the allegations against each are nearly identical. The one defendant which is not a Claim Defendant is the Goodyear Tire and Rub-ber Company, on behalf of which C.R.A. Realty Corp. brings this action.

**2.** Claim Defendants dispute that their cooperation agreement to act together with respect to the acquisition of Goodyear stock created a joint venture or partnership, but the allegations in the complaint on a motion to dismiss must be accepted as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

shall file, at the time of the registration of such security on a national securities exchange ... a statement with the Commission ... of the amount of all equity securities of such issuer of which he is the beneficial owner....

CRA alleges that, although Delaware I and Bermuda I each individually owned less than ten percent of the outstanding Goodyear common stock, their holdings, which exceeded ten percent when combined,[3] should be aggregated because the Claim Partnership consists of Bermuda I, Delaware I and other Claim Defendants. CRA further contends that the Claim Partnership and its component partners—the Claim Defendants—should each be considered a person that is a beneficial owner of more than ten percent of the Goodyear stock under §§ 16(a) and (b). Because the Claim Defendants and Claim Partnership subsequently purchased from and within six months resold Goodyear stock to Goodyear, CRA argues that the Claim Defendants are liable under § 16(b) and must disgorge to Goodyear the profits they realized on those transactions.

Claim Defendants assert that, as a matter of law, the individually owned holdings of Goodyear stock held by Delaware I and Bermuda I cannot be aggregated to establish a "person" that beneficially owned the Goodyear stock for the purposes of either § 16(a) or § 16(b). Claim Defendants maintain that, since plaintiff fails to allege that the Claim Partnership held any stock for its own account[4] or that it or any of the individual Claim Defendants beneficially owned the stock of the others, neither the Claim Partnership nor the individual Claim Defendants can be ten percent beneficial owners of Goodyear under § 16(b).

The issue whether the holdings of two or more individuals or partnerships which become partners in a new partnership can be aggregated to subject them or the new partnership to liability as a ten percent beneficial owner under §§ 16(a) or (b) appears to be one of first impression. The only relevant discussion by the Securities Exchange Commission ("SEC"), which both parties cite, is found in Securities Exchange Act Release No. 34–18114, 46 Fed. Reg. 48,147 (Sept. 23, 1981) which reads:

> Question: Must a member of a partnership take into account the entire holdings of the partnership in determining whether he is a 10% beneficial owner of a class of equity security of a registered company?
>
> Answer: No. A partner is required to include only his own economic interest in the partnership holdings. Thus only his pro rata interest in the securities held by the partnership must be added to his own personal beneficial interest.
>
> Of course, where a partnership *holds for its own account* more than 10 percent of a class of equity security of a registered company, it should file reports of such holdings ... since the partnership would be the direct beneficial owner of more than 10 percent.
>
> *Illustration:* Three individuals form a general partnership in which each has an equal interest. The partnership holds 29 percent of a class of registered equity security. The partners do not hold any other securities of that class.
>
> *Interpretation:* Since each partner's pro rata interest in the securities is less than 10 per cent of the class, the individual partners are not subject to section 16(a). Of course, the partnership itself would be subject to the reporting requirements.

(Emphasis added.)

■ Although SEC Release 34–18114 specifically refers to § 16(a), the definition of "person" under 16(a) is incorporated by reference in § 16(b). Thus, under the SEC interpretation, the Claim Defendants can-

---

**3.** Plaintiff's Second Amended Complaint ("Complaint") at ¶¶ 41–43 alleges that on October 27, 1986, prior to the sales and purchases which resulted in short swing profits, Delaware I owned approximately 2.37% and Bermuda I owned 8.17% of the outstanding Goodyear common stock. Thus, aggregated the two partnerships held 10.54% of the Goodyear stock.

**4.** CRA alleges that Bermuda I and Delaware I were the "ultimate record owners of GOODYEAR shares" purchased by the Claim Defendants. Complaint at ¶ 33(d).

not be liable either individually because each held less than ten percent of the Goodyear stock or as partners in the Claim Partnership because the Claim Partnership did not hold ten percent or more of the outstanding equity securities of Goodyear *for its own account.* CRA alleges only that Delaware I held 8.17% of the Goodyear stock and that Delaware I held 2.37%. There is no allegation that the Claim Partnership actually owned any stock for its own account.

CRA also fails to allege sufficiently that either the Claim Partnership or any of the Claim Defendants was the beneficial owner of the Goodyear stock held by another. To allege such beneficial ownership, CRA would have to assert that one of the Claim Defendants or the Claim Partnership received some direct pecuniary benefit from the Goodyear shares held by another. For example, if Delaware I were paid some portion of the dividends that Bermuda I received from its Goodyear holdings, then Delaware I might be deemed the beneficial owner of those holdings. In that case Delaware I would be the record owner of 8.17% and the beneficial owner of 2.37% of the outstanding Goodyear stock and therefore would be a ten percent beneficial owner under § 16(b).

To ascertain whether a person is a beneficial owner of another's stock under § 16(b) a court should determine whether the actual rewards of ownership were sufficiently present to warrant attributing stock to the insider for the purposes of § 16(b). In making this determination, the court should especially consider as key factors the degree to which the insider exercised control over the securities and the insider's ability to use the profits made.

*Whittaker v. Whittaker Corp.,* 639 F.2d 516, 526 (9th Cir.1981). In *Whittaker* the defendant was deemed to have beneficially owned his mother's shares upon which he made an insider profit because he had general power of attorney and he "felt free to utilize his mother's assets exactly as if they were his own." *Id.* at 523. Similarly, in *Whiting v. Dow Chemical Co.,* 523 F.2d

680, 688–89 (2d Cir.1975) the court held that a corporate insider beneficially owned his wife's stock for purposes of § 16(b) liability where the income from that stock was available to both spouses and the relevant stock transactions were part of a common investment plan. *See also CBI Industries, Inc. v. Horton,* 682 F.2d 643, 646 (7th Cir.1982) (no beneficial ownership under § 16(b) where defendant controlled funds in trust but received no direct pecuniary benefit); *Mayer v. Chesapeake Insurance Co.,* 698 F.Supp. 52, 56 (S.D.N.Y.1988) (in group of corporations and individual who controlled them, only corporation that received proceeds from sale of shares was beneficial owner). In the instant case, CRA fails to allege that any Claim Defendant received such direct pecuniary benefit from the Goodyear stock held by another.

A recent relevant case in this district, *Rothenberg v. Jacobs,* No. 86–1498 (S.D. N.Y. Jan. 11, 1989), involved several defendants who each owned less than ten percent but collectively owned more than ten percent of Castle & Cooke Co. The defendants acted in concert to coordinate their individual purchases of Castle & Cooke stock and filed a Schedule 13–D statement with the SEC identifying themselves as a group. As in the instant case, plaintiff alleged that defendants who acted in concert should be considered collectively to be a ten percent beneficial owner under § 16(b). The court granted defendants' motion for partial summary judgment because it found that each individual defendant derived the economic benefit and received the profit only from the sale of stock that each individually owned and thus the defendants were not ten percent beneficial owners. The court carefully distinguished § 16(b) from § 13(d):

Pecuniary benefit, rather than control over the securities, is the determining factor of beneficial ownership.... Filing may thus be required by 13(d) in a number of situations where there is a potential for control over the issuer that would nonetheless not implicate potential liability under 16(b). Such is the situation here. The undisputed fact that the defendants, as a group, had agreed to act

together in their dealing of the Castle & Cooke securities is not the equivalent of any one member's receipt of the pecuniary benefit from the sale of all of the securities purchased by the group.... Rothenberg ... asks that 16(b) be stretched to include "control" considerations in the determination of liability. That I will not do; the language of 16(b) imposes liability only for profits personally realized.

*Id.* at 6–8 (citations omitted). CRA argues *Rothenberg* is distinguishable because in that case discovery had been completed and the court found as a matter of fact that each defendant received the sale proceeds from only those shares that each owned individually. In the instant case, although no discovery has taken place, CRA fails to plead that the individual Claim Defendants received direct pecuniary benefit from the shares of Goodyear owned by other Claim Defendants.

The *Rothenberg* court's narrow construction of § 16(b) is consistent with several Supreme Court decisions, beginning with *Blau v. Lehman,* 368 U.S. 403, 82 S.Ct. 451, 7 L.Ed.2d 403 (1962). The *Blau* Court refused to hold that, merely because one of its partners was liable as a director of the corporation which issued the stock involved, a partnership was liable under 16(b) as a beneficial owner for short-swing profits it made. The Court declined to construe § 16(b) as rendering a partnership liable where the partnership was not itself a beneficial owner, director or officer of the corporation, even though a partnership "can be treated as an entity under the statute." *Id.* at 410, 82 S.Ct. at 455. The Court relied on the fact that Congress had considered and rejected extending liability under § 16(b) to include entities that were not themselves ten percent beneficial owners, directors or officers but which had made profits after receiving information from some such person. *Id.* at 411–13, 82 S.Ct. at 455–57. The rejection of this provision has been regarded as evidence that Congress decided not to try to reach insiders attempting to avoid § 16(b) by creating alter-egos. *See* Note, *"Beneficial Ownership" Under Section 16(b) of the Securi-*

*ties Exchange Act of 1934,* 77 Colum.L. Rev. 447, 450 (1977).

In *Reliance Electric Co. v. Emerson Electric Co.,* 404 U.S. 418, 422, 92 S.Ct. 596, 599, 30 L.Ed.2d 575 (1972), the Court emphasized that a narrow construction is appropriate because § 16(b) is a rule of strict liability designed to minimize difficulties of proof. Thus a defendant's intent or the existence of actual speculation is irrelevant. In *Reliance* the Court held that an insider was not liable for the second of two sales of stock made within six months where the first sale of stock reduced the defendant's holdings from 13 percent to 9.96 percent of the outstanding stock of the company involved. Section 16(b) requires that a ten percent owner be such "both at the time of the purchase and sale ... of the security involved." 15 U.S.C. § 78p. Thus, because the defendant was not a ten percent person at the time of the second sale, he was not held liable, even though he planned the two sales to avoid liability on the second sale. The Court discussed the Congressional purpose behind § 16(b):

> [T]he only method Congress deemed effective to curb the evils of insider trading was a flat rule taking profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great.... Congress did not reach every transaction in which an investor actually relies on inside information. A person avoids liability if he does not meet the statutory definition of an "insider," or if he sells more than six months after purchase. Liability cannot be imposed simply because the investor structured his transaction with the intent of avoiding liability under § 16(b). The question is, rather, whether the method used to "avoid" liability is one permitted by the statute.

404 U.S. at 422, 92 S.Ct. at 599.

A more recent Supreme Court opinion states that "[i]t is inappropriate to reach the harsh result of imposing § 16(b)'s liability without fault on the basis of unclear language. If Congress wishes to impose such liability, we must assume it will do so expressly or by unmistakable inference."

*Foremost–McKesson v. Provident Securities,* 423 U.S. 232, 252, 96 S.Ct. 508, 520, 46 L.Ed.2d 464 (1976). The *Foremost–McKesson* Court held that an insider was not liable for short-swing profits under § 16(b) where the insider became a ten percent beneficial owner only after the initial purchase of stock within the six month statutory time period. The Court reiterated that Congress carefully tailored the scope of § 16(b) because that section imposes strict liability. Finally, the Court indicated that several alternative statutory sanctions exist through which plaintiffs could attain relief. *Id.* at 255, 96 S.Ct. at 521.

Recent cases in this district have also followed the Court's admonition to construe § 16(b) narrowly. *Jammies International, Inc. v. Nowinski,* 700 F.Supp. 189 (S.D.N.Y.1988), held that the six month period during which insiders are prohibited from making profits under § 16(b) is determined by measuring from the last day of a month with 31 days to the last day of a month with only 30 days. In deciding the question of first impression the court stated, "As a matter of policy ... the draconian penalties of section 16(b) should not be imposed when, as here, there is, to say the least, a confusing ambiguity as to whether its terms have been violated." *Id.* at 192. *See also Rothenberg v. Jacobs,* No. 86–1498 (S.D.N.Y. Jan. 11, 1989).

Finally, CRA argues that recently issued SEC proposed rules clarifications, which would liberalize the definition of a § 16(b) ten percent beneficial owner, should apply in this case. Under the proposed clarifications, CRA asserts, it has alleged the existence of a ten percent owner because aggregation of the Goodyear holdings of individual partners in the Claim Partnership would now be permitted. The proposed rules would apply Section 13(d) control concepts to determine who is a ten percent beneficial owner under § 16(b):

Thus, in determining beneficial ownership for purposes of ascertaining who is a ten percent holder, the analysis properly should turn on the person's potential for control. The proposed rules would rely on Section 13(d) definitions for determining who is a ten percent holder.... Proposed Rule 16a–1(a)(1) would state that a person would be deemed a ten percent holder for purposes of Section 16 if that person is deemed a ten percent beneficial owner under Section 13(d) of the Exchange Act and the rules thereunder.... [The proposed rule would recognize that] indirect pecuniary interests are sufficient to establish a reporting obligation and the potential for short-swing profit recovery with respect to those securities.

[Current Volume] Fed.Sec.L.Rep. (CCH) ¶ 84,343 at p. 89,602–03 (Dec. 2, 1988).

The Claim Defendants have filed a Schedule 13D with the SEC disclosing that under Section 13D they collectively owned an aggregate of 11.5% of Goodyear's outstanding common stock and stating: "As a result of the Cooperation Agreement, each partnership may be deemed to own beneficially (as that term is defined in Rule 13–D under the Act) Shares directly owned by the other partnership."[5] Therefore, under the proposed clarifications issued by the SEC, CRA has alleged the existence of a person who may be a ten percent beneficial owner under § 16(b) because the allegations in the complaint relating to the formation of the Claim Partnership and the fact that Claim Defendants have filed a 13D statement sufficiently plead indirect pecuniary benefit.

■ However, these SEC proposed clarifications do not apply in this case. The rules have not been adopted in final form and therefore do not control. As discussed above, existing case law supports the proposition that shares owned by different persons may not be aggregated to create a ten percent person absent an allegation that one person received direct pecuniary benefit from another's shares. No such direct benefit is alleged by CRA.

■ Moreover, even if the proposed regulations were adopted, there is a question whether they would apply retroactively to the Claim Defendants. The force of the

**5.** Appendix to Defendants' Motion to Dismiss at 20 (Jan. 20, 1988).

proposed regulations directly contradicts current case law. The SEC states that its proposed definition of a ten percent beneficial owner "would go beyond most of the judicial decisions and state that an indirect pecuniary interest is sufficient to convey beneficial ownership." [6] Claim Defendants may have relied in good faith on existing law, making it inequitable to apply the regulations to them retroactively.[7]

For the reasons discussed above, it follows that, because CRA has not alleged that 1) the Claim Partnership or any of the individual Claim Defendants were record owners of more than ten percent of Goodyear or 2) the Claim Partnership or any one of the Claim Defendants received direct pecuniary benefit from the shares of Goodyear owned by another, CRA has failed to allege that the Claim Partnership or its individual partners were ten percent beneficial owners under § 16(b).

## II. The § 16(a) Claims

Claim Defendants argue that they are not liable under the § 16(a) reporting requirement because there is no express private right of action under that provision and none should be inferred. In determining whether to infer a private right of action, courts should examine Congressional intent as revealed in the "context, language, and legislative history" of the statute. *Thompson v. Thompson*, 484 U.S. 174, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982). The Supreme Court has recently reduced its emphasis on the other

factors described in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), in favor of greater focus on legislative intent. *See Thompson v. Thompson*, 108 S.Ct. at 521 (Scalia, J., concurring); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 23–24, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979); *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2488–2489, 61 L.Ed.2d 82 (1979).

In *ScienTex Corp. v. Kay*, 689 F.2d 879 (9th Cir.1982), the court concluded that Congress did not intend to provide a private right of action under § 16(a). The *ScienTex* court held that both the text and the legislative history of § 16(a) were silent as to whether Congress intended to create a private right of action. *Id.* at 881–4. The court found similarities between § 16(a) and § 17(a) of the Securities and Exchange Act, which the Supreme Court in *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) has held contains no implied right of action. The *ScienTex* court noted that under § 17(a), as under § 16(a), "[n]o enforcement rights are expressly conferred on private parties nor is any conduct proscribed as unlawful." *ScienTex*, 689 F.2d at 882. The court noted that the Supreme Court in *Touche Ross & Co* had made an identical finding with respect to § 17(a), which served as the basis for the Court's conclusion that § 17(a) was a mere filing requirement, containing no private enforcement mechanism. *Id.* In *ScienTex*, the court found dispositive the presence of an explicit private right of action in § 16(b), 689 F.2d at 882–83, as contrasted with its total absence in § 16(a). It also noted that Con-

---

**6.** [Current Volume] Fed.Sec.L.Rep. (CCH) ¶ 84,343 at p. 89,603 n. 57.

**7.** Claim defendants also argue that, even if the proposed rules were adopted, the rules would not affect the transaction in this case because 15 U.S.C. § 77s(a) states:

No ... liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation or order of the (Securities and Exchange) Commission ... notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded....

This provision applies, however, only where there has been reliance on

an SEC rule, regulation, or at least a "general understanding ... regularly given effect by the Commission's able staff in dealing with lawyers who specialize in SEC matters" or "an article of faith among lawyers specializing in the securities field."

*Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303, 1313 (2d Cir.1977) (quoting *Gerstle v. Gamble–Skogmo, Inc.*, 478 F.2d 1281, 1293, 1294 (2d Cir.1973)). Claim Defendants cite no such rule, regulation or general understanding upon which they relied and therefore 15 U.S.C. § 77s(a) is not applicable.

gress had provided explicit public enforcement mechanisms for 16(a) violations in the form of criminal sanctions and the SEC's right to apply for injunctive relief.

■ CRA argues that the private right of enforcement in § 16(b) indicates that "express private enforcement is the lynchpin of Section 16" and thus logically implies a corresponding private right in § 16(a). But the court's reasoning in *ScienTex* persuasively refutes this contention. The presence of an express private right of action in § 16(b) more reasonably indicates that had Congress intended a private right of action under § 16(a) it would have made appropriate express provisions. *See also Touche Ross*, 442 U.S. at 571–72, 99 S.Ct. at 2486–87; *Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 14–15, 101 S.Ct. 2615, 2623, 69 L.Ed.2d 435 (1981) ("[W]here a statute provides a particular remedy or remedies, a court must be chary of reading others into it."); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19, 100 S.Ct. 242, 246, 62 L.Ed.2d 146 (1979).

Finally, it is important to note that, as indicated above, § 16(a) and § 16(b) serve different purposes and § 16(a) is not, as CRA alleges, solely designed to enhance enforcement of § 16(b). Congress intended § 16(a) to deter a wide range of insider actions not covered by the much narrower scope of § 16(b). *Foremost–McKesson v. Provident Securities*, 423 U.S. at 256 n. 31, 96 S.Ct. at 522 n. 31. *See also Lewis v. Mellon Bank*, 513 F.2d 921, 923 (3d Cir. 1975) ("Congress intended sections 16(a) and 16(b) to operate independently."). Thus, CRA's basic argument, that a private right of action in § 16(a) should be inferred because § 16(a) is solely designed to aid enforcement of § 16(b), is unsupported and without merit.

\*      \*      \*      \*      \*      \*

The Claim Defendants' motion to dismiss is granted and the complaint is dismissed.

It is so ordered.